# SEPTEMBER TERM.

## CHARLESTOWN.

24 493
e 51 47

### HORNBROOKS *v.* LUCAS.

Submitted June 5, 1884—Decided September 13, 1884.

1. Rent being payable quarterly, a landlord accepted the negotiable note of his tenant for the amount of the rent for the two previous quarters, not including interest thereon to the time when the notes became due. HELD :

   The acceptance of these negotiable notes by the landlord operated as an agreement to suspend the right of distress, until there should be a default in the payment of these notes respectively ; and this implied agreement was sustained by a sufficient consideration. (p. 500.)

2. The mere taking of a negotiable note of the debtor is no satisfaction of a precedent debt. It operates however to suspend the party's right to sue on the old debt, until there is a right of action on the new ; and the reasons on which this rule is based make it as applicable to a debt, which is based on rent, as to any other debt; and the right of distress is suspended, as well as the right of a suit on such debt. (p. 502.)

GREEN, JUDGE, furnishes the following statement of the case :

Theodora L. Hornbrook and Charles P. Hornbrook owned certain real estate in the city of Wheeling, Ohio county, West Virginia, which they rented to C. Y. Lucas for the year ending April 1, 1883, for the sum of nine hundred dollars, payable quarterly. The two hundred and twenty-five dollars due January 1, 1883, not being paid Lucas gave and the Hornbrooks received on February 25, 1883, for the quarter's rent due January 1, 1883, a negotiable note payable sixty days after date and negotiable at the Exchange bank of Wheeling. This note was signed by C. Y. Lucas and was payable to the order of T. P. Hornbrook, executrix for the heirs of Thomas Hornbrook, deceased. C. Y. Lucas expecting to move from the real estate so rented at the end of the year that is on April 1, 1883, about a week before that time on March 23, 1883, agreed with his landlord that he should then give for the quarter ending April 1, 1883, a like negotiable note for two hundred and twenty-five dollars payable three months after its date. The note was not actually given till April 7, 1883, though drawn March 23, 1883, and was payable to T. P. Hornbrook, administratrix. This note was delivered to the landlords, the Hornbrooks, on April 7, 1883, and was by them accepted. This was about a week after the rent, for which this note was given, was due, this rent falling due on April 1, 1883. Without waiting till either of these negotiable notes became due the landlords had issued a distress-warrant for this four hundred and fifty dollars of rent one half of which by the lease was due on January 1, 1883, and the other half on April 1, 1883. This distress-warrant was levied on certain property of C. Y. Lucas, and April 23, 1883, fixed as the day of sale ; but on April 15, 1883, C. Y. Lucas with P. B. Dobbins his security, gave a forthcoming bond to the landlords to have this property forthcoming on the day of sale. This bond was forfeited and duly returned to the clerk's office. On the very day that C. Y. Lucas delivered to his landlord the last negotiable note for this rent subsequently distrained for, he without any notice to them executed a general assignment of his effects. After due notice served May 9, 1883, the landlords

on May 2, 1883, moved the circuit court of Ohio county to render a final judgment and award execution on this forfeited forthcoming bond. The defendants, C. Y. Lucas and P. B. Dobbins, pleaded that the distress upon which the bond was given, was for rent not due and was otherwise illegal, and further pleaded payments and set-off, and filed their negotiable notes as their account of payments and set-off, and to these pleas the plaintiffs in this motion replied generally. The case was by consent of parties submitted to the court in lieu of a jury and on October 6, 1883, the court rendered the judgment for the amount due on the forthcoming bond against the obligors. To this the defendants excepted; and all the facts proven as stated above were set forth in the bill of exceptions, and also the plaintiff produced these two negotiable notes which had not been assigned and offered to surrender them for cancellation.

This Court on December 2, 1883, on the petition of the defendants allowed a writ of error and *supersedeas* to this judgment.

*W. P. Hubbard* for plaintiff in error.

*D. Peck* for defendants in error.

GREEN, JUDGE:

The only question really involved in this case is: Can a landlord, who either before or after rent is due takes from his tenant a negotiable note for the rent payable on time, before this negotiable note becomes due, distrain his tenant for the rent? The counsel for the defendant in error in argument insists, that the tenant Lucas in this case committed a fraud on his landlords, when he induced them on the 7th day of April, 1883, to take his negotiable note payable at a future time for the rent due on April 1, 1883. But the evidence as certified in the bill of exceptions by the court below fails to prove that Lucas committed any such fraud on his landlords. It is true that the evidence as certified does show, that on the very day that the landlords took this note from their tenant Lucas, he "executed a general assignment of his effects without any notice thereof to his landlords."

This assignment however was not produced, nor does it appear whether it was executed before or after the landlords accepted this note. It further appears, that these landlords had agreed to accept such a negotiable note on March 23, 1883, some two weeks before such general assignment by Lucas and some weeks before this rent was due. Nor does it appear from the evidence as certified that C. Y. Lucas was insolvent, or that he made to his landlords any sort of misrepresentation of his pecuniary condition. It seems to me obvious, that this Court upon the evidence as certified by the court below would not be justified in drawing the inference, that a fraud has been committed by Lucas on his landlords by inducing them to accept for his rent this negotiable note, there being nothing in the case even relied upon to show such fraud except the simple fact, that on the same day, on which he delivered the note for the rent, " he executed a general assignment of effects without giving his landlords notice of his intention to make such assignment." Such an inference of fraud from this simple fact, if it could be fairly drawn, would be, it seems to me, rebutted by the fact that the agreement by the landlords to accept this negotiable note was made two weeks before this general assignment, and there is nothing whatever to show, that, when this agreement was made, the tenant Lucas contemplated making any such general assignment, and nothing to show, that he was insolvent, either when he made this agreement, or when he delivered to his landlords this note for his rent.

It only remains to determine, whether or not the giving of the two negotiable notes by Lucas, one dated February 23, 1883, and the other March 23, 1883, for the rent due from him on January 1, and April 1, 1883, respectively suspended the right of the landlords to distrain till these negotiable notes became due and payable or whether the giving of these negotiable notes was a satisfaction of the rent. As the evidence shows that these notes were not *expressly* agreed, when they were received, to be absolute payment or extinguishment of this rent, it is clear beyond controversy that the receipt of these notes by the landlords of the tenant cannot possibly be held to be absolute payment or an extinguishment of the rent. See *Miller* v. *Miller*, 8 W. Va. 551, 552;

*Pool's Co.* v. *Price*, 9 W. Va. 73; *Fea nster* v. *Withrow*, 9 W. Va. 327; *Dunlap's Ex'or.* v. *Shanklin's Ex'or.*, 10 W. Va. 662; *Feamster* v. *Withrow*, 12 W. Va. 611, 652, 653; *Bantz & Co.* v. *Basnett*, 12 W. Va. 773; *Sayre, &c.* v. *King, &c.*, 17 W. Va. 562, 574; *Bank* v. *Good, Admr. &c.*, 21 W. Va. 455. These cases in our own Court show that even had the claim of the Hornbrooks against Lucas been of no higher dignity than a simple contract, it would not on the facts shown in this case have been extinguished by the acceptance of these notes of Lucas. But as their claim was for rent, which, as it issues out of reality, is of higher nature than a simple contract, it is still more obvious, that it could not be merged or extinguished by the acceptance of these notes without an express understanding to that effect, even if by such an understanding it could be extinguished, which has been questioned. See *Cornell* v. *Lamb*, 20 Johns. R. 407; *Newport* v. *Godfrey*, 3 Lev. 267; *Gage* v. *Acton*, Com. R. 67; *Willett* v. *Earle*, 1 Vern. R. 490; 12 Mod. 7; *Chipman* v. *Martin*, 13 Johns. R. 240; *Bates* v. *Nellis*, 5 Hill 651; *Atkins* v. *Byrnes*, 71 Ill. 326; *Davis* v. *Gyde*, 29 Eng. Com. Law R. 166, 168.

But though it is clear, that the acceptance of these negotiable notes of Lucas the tenant by the landlords did not extinguish the rent due from Lucas, yet, it seems to me, it did operate as a suspension of the right of his landlords to enforce the payment of this rent in any manner, till after the notes became due and payable. The cases in our own State above cited show clearly, that if instead of rent the claim against Lucas had been due by a simple contract whether in writing or not, the simple taking from him of notes payable at a future time for the debt due would have operated as conditional payment and have therefore suspended the enforcement of such debt, till the notes taken for it were due and payable, an agreement being implied from the mere acceptance of the note of a debtor payable at a future time, that the creditor would extend the time of payment of the debt, till the note taken by him should become due and payable. But of course to make this implied agreement binding on the creditor, there must be some consideration to support it. This is not expressly stated in these cases in our courts gen-

erally; but in every case where the taking of a note of the
debtor payable at a future time has been considered by our
courts as a conditional payment of a previous debt, that is, as
operating as an agreement on the part of the creditor to sus-
pend his right of suit, till the note taken by him for his
debt is due, there has always been some consideration to
support this implied agreement.    Take for instance the last
of these West Virginia cases *Bank* v. *Good*, 21 W. Va. 455,
point 3 of syllabus.    This Court decided in that case:    "The
giving of a new note for an old one which had become due—
the amount and maker of the two notes being the same—
will not be treated as a payment or extinguishment of the
old note or the pre-existing debt, unless the parties so ex-
pressly agree; but it will be regarded merely as an extension
of credit."    But if we look at the case, in which it was thus
held, that the giving of the new note was an extension of
the credit by implication, it will ,be seen (see p. 456) that the
interest on the new note was paid in advance and was the
obvious consideration, which moved the creditor to grant
such extension of credit to the debtor. Had not this or some
other consideration existed, I presume this extension of
credit by the taking of a new note payable at a future time
would have been regarded as rendering this agreement to
extend the credit a *nudum pactum*; and the creditor could
have sued on the old note or debt, before the new note be-
came due and payable.

The same conclusion, it seems to me, would follow, if a
new bond was given for an old bond, the amount of the bond
and the obligor or obligors in it being the same as in the old
bond, and the new bond being payable on time and not bear-
ing interest till it fell due.    In such case, as the obligor or
obligors in the new bond would be the same and would
be bound in the same manner, so that the giving of the new
bond could not possibly prejudice the obligors in it nor bene-
fit the obligee, the implied agreement to extend the credit
on the old bond would, it seems to me, be a *nudum pactum*
and void, and therefore the old bond or debt might be sued
upon, before the new bond was payable.    But this could not
be successfully done, if the new bond bore interest from its
date; for this would be a sufficient consideration for the

agreement to extend the credit. If however we suppose, that instead of a new bond there was given a negotiable note executed by the obligor in the old bond and given for the same amount as the bond and at the time the bond fell due, payable at a future time without interest from its date, and no interest was paid in advance, still, it seems to me, the bond could not be sued on, till the negotiable note became payable and the maker failed to pay it.    For the taking of the note would be an extension of credit to the obligor in the bond, and the implied agreement to extend this credit would be supported by a valuable consideration, namely the change in the character of the obligation which would be produced by the taking the negotiable note of the obligor in the bond. Anything which confers benefit on the party to whom the promise is made or loss or inconvenience on the party promising is a valuable and sufficient consideration to support any promise.    It is a matter of no sort of importance what is the amount of inconvenience on the one side and of advantage on the other.    It is sufficient in such case that one or the other existed in any degree however slight.    See *Uhler* v. *Applegate*, 2 Casey (26 Pa. St.) 140.    The part payment of a debt in that case but a single day before it was due was held a valuable consideration to sustain a promise by the creditor; but if this part payment had been made the next day it would have been no consideration.    The same was held by the whole court in *Bantz & Co.* v. *Basnett*, 12 W. Va. 773, point 3 of the syllabus and pages 850–853.    In that case the part payment was made only two days before the debt was due. Now the giving of a negotiable note in lieu of a bond is or may be a benefit to the creditor and a possible inconvenience to the debtor.    It gives to the creditor a different obligation from the one he held, and the new obligation is a commercial one, upon which he may raise money.    The debtor too by giving a negotiable note instead of a bond may subject himself to inconvenience.    If he fails to pay his negotiable note promptly, he renders himself liable to be protested, and may then lose his credit to an extent that the non-payment of his bond promptly would not produce.    Moreover if the negotiable note, should be negotiated before it falls due, all of the maker's defences, if he had any, against his creditor

would be forever gone; nor could he acquire any offsets against such negotiable note, though he could against the bond, even after it was due and payable. See *Ikin* v. *Brook*, 1 B. & A. 124 (20 Eng. C. L. 357).

If instead of a bond the creditor had a judgment against the debtor, and the debtor gave to the creditor a negotiable note for the amount of the judgment payable at a future time and not bearing interest till it was payable, I presume that the creditor would nevertheless have a right before the negotiable note became payable to issue an execution on his judgment and to enforce its payment. For this implied agreement on his part to give credit on his debt till the negotiable note was payable would, it seems to me, be a *nudum pactum* and therefore null and void. Its nullity however does not, as is claimed, result from the fact that a judgment is of higher dignity than a negotiable note, but it results from the fact that the giving of the negotiable note is of no possible benefit to the creditor and no injury or inconvenience to the debtor. For after the negotiable note becomes due all that the creditor could get would be a judgment for the amount against his debtor, and that he already has. Nor is the debtor inconvenienced, because, though he could not make any defence against the negotiable note, if assigned before it was payable, yet in this he loses nothing, as he could make no defence against a judgment already rendered.

But if the claim of the creditor was a claim for rent, though it be a debt of higher dignity than a negotiable note, yet, it seems to me, the giving for such rent by the creditor of his negotiable note for the amount of the rent, the note being payable at a future day, though it would be no satisfaction of the rent, yet it would operate to suspend the party's right by distress or otherwise to enforce the rent, till the negotiable note should become due. This was expressly decided in the case of *Judge & Dennis* v. *Fiske & Eager*, 2 Speers (S. C.) 436. That case was like the one before us excepting only that the interest on the rent till the negotiable note became due was added in the giving of the note. But this circumstance could make no difference, as the reasoning of the court was in no manner influenced or affected by this circumstance. The court in that case held, that the giving

of a negotiable note payable on time for a precedent debt would operate as an implied agreement by the creditor to extend a credit to the debtor in consideration of the debtor's executing his *negotiable* note for the amount of the debt, and that the giving of such a note would suspend the right of the creditor to distrain or enforce his rent, just as it would suspend the right of a creditor to enforce any other debt.

The counsel for the defendants in error insists, that this position is in conflict with *Cornell* v. *Lamb*, 20 Johns. 407, and *Davis* v. *Gyde*, 29 E. C. L. 166 and other cases which I have cited on page 497. But he relies especially on the two cases above named. In the first of these cases, *Cornell* v. *Lamb*, 20 Johns. 407, it was decided: "The acceptance of a bond for rent is not an extinguishment, even when the rent was reserved on a *parol* lease." This decision it seems to me does not touch the question in the case before us. It is not even claimed that the giving of the negotiable notes in this case *extinguished* the rent, but only that it suspended the collection of the rent, till this negotiable note should become due, and this, for the reasons I have stated, I think it did. In the other case principally relied on by the counsel for the defendant in error, *Davis* v. *Gyde*, 2 Ad. & Ell. 623 (29 E. C. L. 166), it was decided as set forth in the syllabus: "A promissory note given and received for rent does not extinguish the claim for such rent, which is a debt of higher dignity than that arising from the note. Nor does the receipt of such note of itself suspend the right of distraining. If the giving of such note be pleaded in bar to an avowry, it must be shown that the note was accepted in satisfaction; or that by special agreement or from other circumstances pleaded it suspended the right of distress." Let us consider in what this decision varies from the views we have expressed, or from those of the South Carolina case which I have referred to, *Judge & Dennis* v. *Fiske & Eager*, 2 Speers 436. In so far as it holds that a negotiable note given and received for rent does not extinguish the claim for such rent, they are in perfect accord; and in so far as it decides that the giving and accepting of such negotiable note for rent due may by special agreement suspend the right of distress, it is also in perfect accord with my view and with the South

Carolina case. The South Carolina case decides expressly
that such an agreement is supported by a sufficient consid-
eration and is not a *nudum pactum* and void. The English
case in effect decides the same thing, for if such express
agreement operates to suspend the right of distress, it can
not be a *nudum pactum* and void. In other words the Eng-
lish case in effect decides that such express agreement is
sustained by a sufficient consideration. The South Carolina
case points out what this consideration is, while the English
does not. In what then do the two cases differ? In nothing
but in what is regarded as sufficient evidence of such an
agreement. The English case holds, that because of the
high dignity of a debt due as rent and the great favor shown
to the right of distress the courts will not consider, that an
agreement to suspend this right of distress should be inferred
simply from the landlord taking from his tenant, after the
rent is due, a negotiable note for the rent payable at a future
time. The South Carolina case on the other hand says, that
such an agreement to suspend the collection of rent by dis-
tress or otherwise must necessarily be implied from the
taking from the tenant a negotiable note payable at a future
time. This is all the difference between them. To my mind
the position taken in the South Carolina case is right.

What possible object could the landlord and tenant have,
the one in taking and the other in giving a negotiable note
payable at a future day except simply to extend the time in
which the rent was to be paid on the tenant binding him-
self to pay it by giving for it a commercial security? We
have seen that it is perfectly well settled in this State, that
the giving by the debtor of a negotiable note to his creditor
payable at a future time would necessarily be interpreted as
an extension of time to the debtor. And it seems to me
clear that we can not interpret otherwise the agreement of
the parties simply from the fact that the precedent debt was
rent. It does not seem to me that the English court was
justified in making this distinction. It is based on the pecu-
liar favor, in which the right of distress is held in England ;
but if such a distinction exists in England for this reason,
it ought not to exist in this State, where so much peculiar
favor is not extended to the right of distress, as is extended

to it in England.  Here the tenant after the levy of a dis-
tress and after the giving of a forthcoming bond may still dis-
pute the claim for rent or even get up offsets against it,
when judgment is asked on the forthcoming bond.  Why
then should he not be permitted to defend himself by prov-
ing that his landlord had agreed to suspend his right of dis-
tress?   And why may he not prove this just as any debtor
would be allowed to prove in any action for any debt, that
the creditor had agreed for a consideration to suspend his
action?   And why may not this agreement on the part of
the plaintiff to suspend his action be proven by the tenant in
the same manner that it can be proven by any other debtor,
that is, by simply proving that the plaintiff had taken of the
defendant a negotiable note for the rent or debt payable at a
future time, which had not expired, when the plaintiff insti-
tuted his proceedings?  I can not see why this mode of
establishing this defence should not be available to a tenant
as well as to any other defendant.

But it is claimed, as it was in the last cited English case,
that the tenant has not sufficiently set up this defence.   To
the motion on the forthcoming bond in this case the defend-
ants filed no written plea; and no written plea need be filed
to a motion on a forthcoming bond.   The pleading in such
case may be and usually is by parol; and this of itself would
prevent any mere technical advantage of this sort being
taken, provided the record shows, as this record does, that
the parties had full knowledge of the questions in contro-
versy, and no point of this character was made in the court
below.   See *McKinster* v. *Garrett et al.*, 3 Rand. 554.   The
oral pleas in this case were:   "That the distress, on which
the bond was given, was for rent not due;" and also "payment
and set-off."   The two negotiable notes were filed as the
account of payments and set-off.   It is therefore obvious, that
the plaintiffs below had full notice of the character of the
defence of the defendants; and this is all that can be required,
when the proceedings are summary and the pleadings merely
oral.   Even had this been a regular action of debt brought
for a debt of any character, and the plea of payment had
been put in by the defendant, when his real defence was that
the plaintiff had accepted his note as *conditional* payment,

which note was payable after the institution of the suit, and with such plea there had been filed as an account or specification of the payment a copy of the note so given, there is much authority which tends strongly to show, that this would be a sufficient pleading to permit this defence to be made under it. See *Ligon* v. *Dunn*, 6 Ired. L. (N. C.) 137; *Hoffman* v. *Walker*, 26 Gratt. 314; *Bantz & Co.* v. *Bassett*, 12 W. Va. 854 and 855. But, be this as it may, there can be no question in my opinion, that this defence could be legitimately made in this case on the oral pleadings and the filing as a specification of set-off and payments the two negotiable notes given for the rent, as in this case the law required no regular pleadings to be filed, but it was a summary proceeding upon motion.

For these reasons I am of opinion that the circuit court erred in the judgment it rendered in favor of the plaintiffs, and that this judgment must be reversed and annulled; and the plaintiffs in error must recover of the defendant in error their costs in this Court expended; and this Court must enter up such judgment as the court below should have done, which must recite that the acceptance by the plaintiffs of the two negotiable notes of Lucas, dated respectively February 23, 1883, and March 23, 1883, filed in this case operated as a conditional payment of the rent due from Lucas to the plaintiffs below, and the distress warrant, under which the forthcoming bond in this case was taken, having been issued and levied before either of said negotiable notes was payable, the same was prematurely issued, and for this reason the said forthcoming bond must be quashed, and the obligors in it, C. Y. Lucas and P. B. Dobbins, must recover of the plaintiffs below, Theodora Hornbrook and Charles P. Hornbrook, their costs about their defence in the circuit court of Ohio county expended, which must be certified to said circuit court.

REVERSED.