# CHARLESTON.

## STATE ex rel. v. IRWIN.

Submitted June 18, 1887—Decided November 19, 1887.

1. CONTEMPT—PROCEDURE—CRIMINAL CHARACTER OF.

   A contempt of court is in the nature of a criminal offence, and
   the proceeding for its punishment is criminal in its character.  (p.
   413.)

2. CONTEMPT.

   Where a defendant in a suit in equity disobeys the process, or-
   der or decree of the court, the regular and proper proceeding for
   such contempt is for the plaintiff to file an affidavit setting up such
   fact, and to move the court to issue a rule in the cause between the
   original parties; and when such rule is issued, served on the de-
   fendant and returned to the court, then the contempt-proceeding
   should be entirely separate from the chancery suit, and placed on
   the docket, entitled The State of West Virginia, at the relation of
   the party at whose instance it was issued, against the offender,
   and be prosecuted on the law-side of the court to judgment; and,
   if the rule is made absolute, the defendant should pay the costs;
   and, if it is discharged, it should be at the cost of the relator.  To
   a judgment against the offender he may obtain a writ of error.  (p.
   413.)

3. CONTEMPT.

   But if such proceeding is had on the chancery side of the court,
   and the order is there entered, such court has no jurisdiction, but,
   to reverse the order, the defendant is entitled to his writ of error.
   (p. 420.)

4. CONTEMPT—PUNISHMENT—DISCRETION OF COURT.

   While the statute has made all contempts criminal in their na-
   ture, and all fines imposed therefor go to the State, yet it has not
   attempted to take away the wise discretion of courts over the pun-
   ishment for contempt, to enable them, by proper coercive meas-
   ures, to compel obedience to their orders, by imprisoning at the
   pleasure of the court, or "until the further order of the court;"
   so that, when the recalcitrant party submits, the court may release
   him from imprisonment.  (p. 417.)

5. CONTEMPT—WHAT CONSTITUTES BREACH OF INJUNCTION.

An injunction granted, but not to take effect or be in force until the plaintiff executes a bond, is a conditional granting of the injunction. So, where such an injunction was granted on the fourteenth of July, 1886, the bond increased on the eighteenth of August, 1886, and no bond executed until the eleventh of October, 1886; and on the twenty first of August and thirty first of the same month, in the year 1886, acts were done which would have been contempt had the injunction been in force: *held*, that the injunction did not take effect until after the acts were done, and there was no breach of the injunction, consequently no contempt of the injunction order committed. (p. 427.)

*R. C. McClaugherty* and *J. M. French* for plaintiff in error.

*Watts & Camden* and *A. R. Page* for defendant in error.

*Alfred Caldwell*, Attorney-General, for the State.

JOHNSON, PRESIDENT:

Pelton filed his bill in the Circuit Court of Wyoming county, in which he alleges that the defendants, Jesse R. Irwin and Harris Hoyt, represent themselves to be the owners of a certain tract of land in Wyoming and McDowell counties, known as the "Morris 480,000 Acre Tract," and also a certain other tract adjoining the same, known as the "Morris 320,000 Acre Tract," and that said defendants on September 10, 1884, by a certain writing under seal, agreed to sell unto the plaintiff, for the consideration of $5,000.00, receipt of part of which was in said writing acknowledged, and for other considerations therein expressed, an undivided third part of each of said two tracts; but, as to the second tract, it was stipulated, "or one third part of so much of the second-named tract as should be recovered,"—it being represented in said contract that the title to said lands was then clouded by liens for arrears of taxes and other claims, which it was agreed therein should be paid off, and the title cleared therefrom, by the said $5,000.00; and the said Irwin and Hoyt agreed therein to execute to the plaintiff a good warranty deed for said one third of said lands; and they further agreed to use all due diligence, and make all necessary exertion, to make surveys, and clear the titles in the best manner; that

he paid the sum of $5,000.00 on account of said contract, that being the consideration money by said contract required to be paid by the plaintiff; and in other respects he has performed his part of said agreement, in so far as he has not been prevented by reason of the defendants failing to perform their part.

The bill charges that, at the time said contract was made, neither said Irwin nor Hoyt had title to the said land, as the premises, as the plaintiff was informed and believed, had been sold for taxes; that the tract of 480,000 acres was sold by the commissioner of school lands, and bought by the defendant Irwin; and that on April 21, 1886, the said defendant Irwin, by deed, conveyed to defendant Hoyt one fourth of said 480,000 tract of land; by reason of the deed from the commissioner of school lands to Irwin, and the deed from Irwin to Hoyt, the said defendants became seized in fee of said tract of land, unincumbered from taxes, or other lien; "and that they are still seized of a sufficient quantity thereof to answer your orator's demand;" that plaintiff has frequently requested and demanded that the defendants, Irwin and Hoyt, should perform the contract on their part, which they have refused to do.

The bill further charges that the defendants, Irwin and Hoyt, have confederated with A. Irwin, N. R. Benson, and C. F. Thomas, and divers persons unknown to the plaintiff, and pretend that said Irwin has agreed with said Benson, Thomas, and others for a loan of $25,000.00, for the payment of which said defendant has incumbered the said lands by mortgage to said Benson, although but a small portion of said money has been paid; that this has been done to the great prejudice of the right of plaintiff, and against his protest, expressed to Irwin and Hoyt; that as a part payment of said loan, Irwin has conveyed to Charles F. Thomas an undivided fourth interest in said tract of 480,000 acres, greatly to the prejudice of plaintiff's right, and against his protest; that said Irwin also delivered for record to the clerk of the County Court of Wyoming county a deed, duly acknowledged, dated August 21, 1886, purporting to convey to Alvin Irwin an equal fourth part of said land. He charges that this deed was without consideration. He then propounds to the defendants certain interrogations,

and further charges that the defendants threaten to convey and incumber the whole or some part of said tracts of land, and to grant the right to enter upon said lands and remove timber therefrom. He makes all the parties named defendants, and prays a specific execution of his contract; that if the contract cannot be specifically performed, according to the terms thereof, by reason of the acts of the defendants, a partial performance may be decreed, and that a sufficient sum may be adjudged to be paid plaintiff by defendants, Irwin and Hoyt, to compensate him for the damage suffered by him. He also prays an injunction against Jesse R. Irwin and Harris Hoyt, their agents, etc., "from executing or delivering any deed of conveyance of the whole or any part of the said lands, or from incumbering the same in any way whatsoever, or from granting to any party the right to cut or transport from said lands any timber, or from cutting or transporting timber therefrom, during the pendency of this suit; and further restraining the said defendants, Jesse R. Irwin and Harris Hoyt, their agents, attorneys, or servants, or either of them, from receiving or accepting any further or other sums of money, and restraining the said defendant, Nathaniel R. Benson, and his agents, attorneys, or servants, from paying over to the defendants, Jesse R. Irwin and Harris Hoyt, any sums of money that may be or may become due upon the mortgage now an incumbrance on said lands."

The injunction was granted as prayed on the fourteenth day of July, 1886, "but not to take effect or be in force until the plaintiff, or some one for him, file, with the papers in this cause, bond, with security to be approved by the clerk of this court in the sum of $250.00, conditioned to pay all such costs as may be awarded the defendants should this injunction be dissolved." Notwithstanding that *no bond was executed*, on the second day of August, 1886, a notice was accepted by counsel of the plaintiff from the defendants that the said defendants would on the fourteenth day of August, 1886, in vacation, move the judge of the Circuit Court of the Ninth judicial circuit (who was the judge of the Circuit Court of Wyoming connty) to dissolve the said injunction. The notice recites the fact that no bond had been executed,

and asks that if said bond is thereafter given, that its penalty be increased to at least $5,000.00.

The judge, in vacation, heard the motion on August 18, it having been continued until then at the request of all parties; and on the consideration of said motion the judge read the affidavits of said Irwin, and a certificate of the clerk of the Circuit Court of Wyoming county, that said injunction bond, required in the order granting the injunction, had not been given; and the judge, in his order, declared that "said injunction is dissolved, and shall stand dissolved until the plaintiff, or some one for him, execute a bond before the clerk of Wyoming Circuit Court, with security to be approved by him, in the penalty of one thousand dollars, in the manner and with the conditions required by the former order granting the injunction in this cause."

No bond was executed until October 11, 1886, when an injunction-bond in the penalty of $1,000.00 was executed, and approved by the clerk of the Circuit Court of Wyoming county, and filed with the papers of the cause. On the same day, before the Circuit Court of Wyoming county, Jeremiah M. Pelton filed his affidavit, in which he states, among other things, the granting of the injunction, the order for the increased bond, that the injunction remained, and that the defendants knew that fact; and contrary to the provisions of the order, and in contempt of the court, and with intent to render said order of no effect, on or about the twenty-first of August, 1886, the defendant, Jesse R. Irwin, executed and delivered a deed conveying the whole or some part of his interest in said lands to Charles F. Thomas, which deed was recorded; that said Thomas well knew of the existence of said order, and conspired with the defendant, Irwin, to render the same of no effect, in contempt of the court; that Harris Hoyt, well knowing said order, seeking to avoid the effect thereof, and to render the same ineffectual to protect affiant's rights, and in contempt of the court, did make, execute, and deliver to one Sumner F. Dunham all his right, title and interest in and to the said property; which deed bears date the thirty first August, 1886, and was recorded on the fourth September, 1886; that said deed was given without consideration, and merely for the purpose of defeating

the plaintiff's rights; that said Dunham on said thirty first August, 1886, conveyed the premises to Maria E. Hoyt, the wife of the defendant, Harris Hoyt, which deed was recorded September 4, 1886.

The plaintiff thereupon asked a rule against the defendants, Irwin, Hoyt, and Thomas, to show cause why they should not be attached or otherwise punished for contempt. Upon this affidavit, on the eleventh day of October, 1886, the court awarded the rule returnable the next day. The rule was served the same day on said defendants. On the thirteenth day of October, 1886, the defendants answered the rule, placing their defence on the ground that the injunction was not operative, because no bond was given; and that on the tenth of August, 1886, it was dissolved, and a bond required in a penalty of $1,000.00, which was not given until the eleventh day of October, 1886. In the order entered, the case is entitled in the chancery court, or on the chancery side of the court, "*State of West Virginia* v. *Jesse R. Irwin, Harris Hoyt, and Chas. F. Thomas.*" The order recites: " This day came the defendants, Jesse R. Irwin, Harris Hoyt, and Chas. F. Thomas, and tendered their answer to the rule heretofore issued in the case of *Jeremiah M. Pelton* v. *Jesse R. Irwin et al.*, requiring the said defendants to show cause, if any they could, why they should not be punished for contempt of this court; which answer is ordered to be filed," etc.

The court then held the answer insufficient to show cause why they should not be punished for contempt, and entered an order as follows: "It is therefore considered and adjudged that the said defendants, Jesse R. Irwin and Harris Hoyt, do specifically perform the said contract in the said complainant's bill of complaint mentioned; or, at their election, do cause a reconveyance to be made to them of the parcels or tracts of land in their said deeds of August 21, 1886, mentioned and conveyed, so that they and the said complainant may be placed *in statu quo* in regard to said suit. And it is further ordered that the said defendants, Jesse R. Irwin and Harris Hoyt, who are present in court, and each of them, shall be attached, and stand attached, and be committed and confined to the jail of Wyoming county, for contempt of this court, until they shall purge themselves thereof by perform-

ing and executing mandates of this order as above set out, and paying the cost of this rule. And the sheriff of Wyoming county is hereby directed, in the name of the State of West Virginia, to take into his custody, to commit to the jail of Wyoming county, the said Jesse R. Irwin and Harris Hoyt, until they and each of them shall purge themselves of the said contempt by performing and executing the mandates of this order." This order, on its face, shows that it was suspended for 60 days, to enable defendants to apply for a writ of error, on condition of a bond being executed in the penalty of $1,000.00, conditioned that defendants would appear at the bar of the court and hear sentence, in the event the said writ should not be granted, or, being granted, should be dismissed. Thereupon said bond was at once given. To this order the defendants obtained a writ of error and *supersedeas.*

The first assignment of error is that the whole proceeding upon the rule was irregular and illegal; it was had in the chancery cause; it should have constituted a regular proceeding of its own upon the law-side of the court; and should have been entitled in the name of the State. That an attempt was made to do this. The order entered on the thirteenth day of October, 1886, is in the name of the State of West Virginia, but it is entered in the chancery order-book, and is to all intents and purposes an order by the chancery court.

In *People* v. *Court of Oyer & Terminer*, 101 N. Y. 247, 4 N. E. Rep. 259, Finch, J., said: "The occasion and result of proceedings for contempt furnish a clear and well-defined line of division, separating them into two classes, which have become somewhat mingled and confused by the use of fixed but ambiguous nomenclature. *In re Watson*, 3 Lans. 408. There may prove to be rare and exceptional cases which do not easily fall within either class, or some which so commingle the characteristics of both as to make their location doubtful and difficult; but, in the main, the division is exhaustive and clear. In one class are grouped cases whose occasion is an injury or wrong done to a party who is a suitor before the court, and has established a claim upon its protection; and which result in a money indemnity to the litigant, or a compulsory act or omission enforced for

his benefit. In these causes, the authority of the court is indeed vindicated, but it is after a manner lent to the suitor for his safety and vindication, for his sole benefit. The authority is exerted in his behalf as a private individual, and the fine imposed is measured by his loss, and goes to him as indemnity, and imprisonment, if ordered, is awarded, not as a punishment, but as a means to an end,—and that end the benefit of the suitor in some act or omission compelled, which are essential to his particular rights of person or of property. This clearly appears from the mode of enforcing the suitor's remedy prescribed by the statute. Code Civil Proc., §§ 2,284, 2,285. A fine may be imposed to indemnify his actual loss. When such is not shown, the fine must not exceed his costs and expenses, and $250 in addition thereto, and in both cases be paid over to the suitor. The imprisonment where the act or duty can yet be performed, must end with the performance of the act and payment of the fine; but if the act or duty cannot be performed, then the imprisonment must not exceed six months, and until the fine be paid. In this last provision there is a trace of the element of punishment, but it is for the violation of the private right of the party, and to check similar violation in the future, and has no respect to public offences, or the vindication of public right. The people may be such a party, but only when, like individuals, they are seeking a civil right or remedy which the misconduct complained of tends to defeat or impede. * * * The second class of cases consists of those whose cause and result are a violation of the rights of the public, as represented by their constituted legal tribunals, and a punishment for the wrong is in the interest of public justice, and not in the interest of an individual litigant. In these cases, if a fine is imposed, its maximum is limited by a fixed general law, and not at all by the needs of individuals, and its proceeds, when collected, go into the public treasury, and not into the purse of an individual suitor. The fine is punishment, rather than indemnity, and, if imprisonment is added, it is in the interest of public justice, and purely as a penalty, and not at all as a means of securing indemnity to an individual. Necessarily, these contempts, in their origin and punishment, partake of the nature of crimes, which are

violations of public law, and end in the vindication of public justice." From this case, cited by the appellee's counsel, it is evident that it is a construction of the statute as to "Contempts."

In the English chancery practice, there are contempts in which what was done was for the benefit of the litigant. In *Hearn* v. *Tennant*, 14 Ves. 136, where a party in contempt of court for breach of an injunction, where possession of the property was changed, the order was "that the possession should be restored, and the plaintiff be put in the same situation, with costs of the application." In the old English cases, we find the proceeding for contempt in the names of the original parties to the suit, where the contempt was committed by a party. *Scott* v. *Becher*, 4 Price, 352; *Lewes* v. *Morgan*, 5 Price, 520; *Vansandeu* v. *Rose*, 2 Jac. & W. 265; *Kimpton* v. *Eve*, 2 Ves. & B. 350; *Hearn* v. *Tennant*, 14 Ves. 136. To the same effect is *Taliaferro* v. *Horde's Adm'r*, 1 Rand. (Va.) 342.

In *Stafford* v. *Brown*, 4 Paige 360, it was held that in a proceeding for contempt against a party to a suit to compel the appearance or answer of a defendant, or to enforce the performance of a decree or order, the affidavits and other proceedings, as well after as before the order for an attachment, are properly entitled in the original cause; that, in proceedings for contempts against witnesses or others who are not parties to the suit, the affidavits and papers previous to and including the attachment should be entitled in the original cause, and all subsequent proceedings should be in the name of the people, on the relation of the party prosecuting the attachment. In that case, the proceeding was against a defendant for refusing to answer. An attachment was taken out, and the defendant arrested. The sheriff arrested him on the return-day of the attachment, who, upon such arrest, stipulated to answer the bill, and paid the bill of costs to the sheriff. A preliminary objection was raised on the part of the complainant that the affidavits on which the motion was founded were entitled in the suit, and not in the matter of the attachment. An application on the part of Brown, the defendant, to set aside the attachment. The chancellor said:

" As there has been no uniform practice in this court as to

the entitling of orders and proceedings to enforce the rights or remedies of parties to the cause, as between themselves, it cannot be irregular to entitle them in either way." * . * * "It was improper for the deputy-sheriff, who served the attachment, to delay the service thereof until it was too late to bring the defendant into court on the return-day. * * * The defendant was not bound to give security for his appearance at the return-day of the attachment, when a compliance with the bond would have been impossible. The arrest of the defendant on the attachment must therefore be set aside, and the sheriff must refund to him the amount received for costs at the time of such arrest; but as the complainant's proceedings have been regular as to the entering of the order, and issuing the attachment, the motion to set aside these proceedings must be denied. The defendants must pay the costs of the former proceedings upon his default in not answering, which occurred previous to his arrest by the sheriff, after such costs shall have been taxed by the proper officer; and he must put in his answer to the supplemental bill, after the service of the order to be entered on this decision, or the complainant may take out a new attachment. The defendant, Nethaniel Brown, must also pay to the solicitor for the complainant his costs of opposing this application."

In *People* v. *Craft*, 7 Paige 325, it was held that where an attachment in a suit in chancery issues, for contempt in not obeying the process of the court, or an order or decree made in the cause, the proceedings upon the attachment may be entitled, either as in the original suit, or in the name of the people, on the relation of the party prosecuting the attachment.

This question has been twice passed upon by this Court, and must be regarded as settled. In *State* v. *Bridge Co.*, 16 W. Va. 864, it was held that a contempt of court is in the nature of a criminal offence, and the proceeding for its punishment is in its character a criminal proceeding. Before the attachment for the contempt issues, the proceedings are to be entitled in the names of the parties to the suit, but afterwards in the name of the State. In *Ruhl* v. *Ruhl*, 24 W. Va. 279, it was held that a contempt of court is in the nature of a criminal offence, and the proceeding for its pun-

ishment is criminal in its character. Consequently, the proceedings after the attachment issues are distinct from the suit in which the contempt was committed, and should be entered separately, and entitled in the name of the State against the offender. If the inferior court fails so to enter the proceedings, that will be error, for which the appellate court will, on appeal by the offender, reverse so much of the decree, if improper on its merits, as orders his punishment. In this cause, a special commissioner was brought before the court on proceedings for contempt, and in the chancery cause he was committed to jail "until the further order of the court" for such contempt. Snyder, J., said, for the Court, after referring to *State* v. *Bridge Co.*, 16 W. Va. 864: "According to this authority, the court below should have entitled the proceedings, after the return of the rule, against O'Keefe (the commissioner) in the name of the State, and made it a separate and distinct proceeding, and entered a separate order in relation thereto. From such an order a writ of error could have been taken, but no such order was made by the Municipal Court in this cause. It follows, then, that said court erred in entering such an order on the chancery side, and, if it is wrong, it must be reversed for this error, as well as on its merits. A court cannot prevent the reversal of an erroneous order by entering it in the wrong order-book."

It is curious to note the change in the law, and what caused it. It was not, before the matter was regulated by statute in this and the old State, held that all contempts partook of the nature of crimes, or that they might not be punished in various ways by fining the party, for the benefit of the plaintiff to the suit, who had injured him, by requiring him to do or undo certain things on pain of imprisonment or putting him in prison until he should do or undo the thing complained of, which was a contempt of the order of the court. Kent, C. J., in *Case of Yates*, 4 Johns. 373, 374, said: "The practice of commitments for contempt during pleasure prevails in the House of Assembly of this State, * * * as well as in the House of Commons in Great Britain. It has been too deep-rooted and inveterate a practice for us now to

correct; and I am persuaded that there exist sound reasons for the universal adoption of it; and that it has not been found, upon experience, to be injurious to the liberty of the subject. The objection is at this time new. It was taken in the *Earl of Shaftsbury's Case*, 1 Mod. 144, and also of that of *The Queen* v. *Paty*, 2 Ld. Raym. 1,105; but in the latter case, though Chief Justice Holt objected to the sufficiency of the return, he took no notice of this objection; and Mr. Justice Powys said that a commitment during the pleasure of the House was more favorable to the prisoner, and more for his benefit, than a commitment for a certain time, as it leaves to the House a power to discharge the prisoner upon his submission. He said that it was agreeable to the constant forms of commitment by the Commons, and was conformable to the commitments by the K. B., which are implied to be during the pleasure of the court."

In *Railroad Co.* v. *Wheeling*, 13 Gratt. 40, we have a clear intimation of why a contempt, though it grows out of the violation of the order of a court, and is therefore contempt of the process of the court, is declared to be in the nature of a crime, and should, therefore, after the proceeding for the contempt is commenced, be proceeded in as such. Moncure, J., said, (page 57:) "A contempt of court is in the nature of a criminal offence; and the proceeding for its punishment is in the nature of a criminal proceeding. The judgment in such a proceeding can be reviewed by a superior tribunal, only by writ of error, and not always in that way." He cites for this, Code, p. 682, ch. 182, § 2; Id. p. 737, ch. 194, §§ 24–27; and Id. p. 779, ch. 209, §§ 1, 4,—and says: "This appeal, so far as it is from that order, must therefore be dismissed." His first citation (section 2, ch. 182, Code 1849) provides for an appeal from a decree dissolving an injunction, etc. The second section (24 *et seq.*) of chapter 194 of the same Code, which regulates proceedings for contempts declares, (section 24:) "The courts, and the judges and justices thereof, may issue attachments for contempt, and punish them summarily, *only* in the cases following: *First*, misbehavior in the presence of the court, or so near thereto as to obstruct or interrupt the administration of justice; *secondly*, violence, or threats of violence, to a judge, justice,

or officer of the court or to a juror, witness, or party going to, attending, or returning from the court, for or in respect of any act or proceeding had, or to be had, in such court; *thirdly*, misbehavior of an officer of the court in his official character; *fourthly*, disobedience or resistance of an officer of the court, juror, witness, or other person to any lawful process, judgment, decree, or order of the said court." Section 25 provides that "no court shall, without a jury, for any such contempt as is mentioned in the first class, embraced in the preceding section, impose a fine exceeding fifty dollars, or imprison more than ten days. But, in any such case, the court may impanel a jury (without an indictment, information, or any formal pleadings) to ascertain the fine or imprisonment proper to be inflicted, and may give judgment according to the verdict." Section 26 provides that "no court shall impose a fine for a contempt, unless the defendant be present in court, or shall have been served with a rule of the court to show cause on some certain day, and shall have failed to appear and show cause." Section 27 declares: "If any person, by threats or force, attempts to intimidate or impede a judge, justice, juror, witness, or an officer of a court in the discharge of his duty, or to obstruct or impede the administration of justice in any court, he shall be prosecuted as for a misdemeanor, and punished by fine and imprisonment, or either, at the discretion of a jury." Sections 27–29 of the present statute are the same as sections 24–26 of the Code of 1849. Section 30 of the present statute modifies section 27 of the Code of 1849, and is as follows: "If any person, by threats, force, or otherwise, intimidate or impede, or attempt to intimidate or impede, any judge, justice of the peace, juror, witness, arbitrator, umpire, or any officer or member of any court in the discharge of his duty, as such, or, by any means, obstruct or impede, or attempt to obstruct or impede, the administration of justice in any court, he shall be guilty of a misdemeanor, and, unless otherwise provided by law, he shall be fined not less than twenty five nor more than two hundred dollars, and be imprisoned in the county jail not exceeding six months." Section 25 of the present law provides for the punishment of a sheriff who shall corruptly, or through favor or ill will, summon a juror

with intent that such juror shall find a verdict for or against either party, by forfeiture of his office, and a fine, and rendering him hereafter incapable of holding office. The twenty sixth section of the present statute provides that any person who shall procure, or attempt to procure, a juror to be summoned with intent that such juror shall find a verdict for or against either party, shall be fined not exceeding $500.00. This statute shows, as well as the Code of 1849, that the intent was, in certain causes, to have the punishment fixed and definite, to be so fixed and definite in all those cases where the act is done beyond recall of the party doing it; but in all those cases where the party could undo a wrong act done, to the injury of a party, or where he could cease from doing an act, or where he refused to obey the order of a court, it was not intended by the statute to take away—if, indeed, it were in the power of the Legislature to take it away—the wise discretion a judge theretofore, under the common law, could exercise in imprisoning a party during his pleasure, and then, when the party ceased to be recalcitrant, to discharge him.

In *Purcell* v. *Purcell*, 4 Hen. & M. 507, the court granted the plaintiff alimony, and decreed "that the defendant should annually pay to the plaintiff $300.00 until he should return to his marital duties." He refused to pay and the court took severe measures to compel him to obey the order of the court. There is this entry in the record, February 19, 1810: "The defendant was brought into court on a commission of *rebellion*, and, refusing obedience to the former order of the court, was ordered to be forthwith committed to the gaol of *Henrico* county." He soon came to terms, for the record further shows that eight days thereafter, on the twenty seventh February, he was brought out on *habeas corpus*, because it was stated to the court that he was ready to do that which was required of him; and, having done what the court required, he was discharged. If a fine and definite imprisonment had been imposed, he would have paid the fine, suffered the imprisonment, and still refused to do what the court required.

I have already quoted from the opinion of Kent, C. J., in the *Case of Yates*, 4 Johns. 318. On page 375, he further

says with great clearness and force: "If the time should be definite in the sentence, the court could not alter it, even upon the submission of the party, and it would operate rigorously upon him. The courts would feel obliged to commit for a time adequate to make due reparation for the contempt without any submission. It is the established course in the courts of law and equity, and in the Legislature, to receive the submission of the party whenever he is ready to offer it, and, on reasonable satisfaction made, to discharge him. The party offending ought to submit, and the form of the order is the most effectual way to ensure it. There is no such thing as the abuse of this power in modern times. The case probably is not to be found. An alarm cannot be excited at its existence in the extent now laid down. It is given to the court only for their preservation, in order to enable them to repel insults, to protect suitors, to support their process, and to be an asylum from violence and oppression." This was a *habeas corpus* case, most elaborately argued and considered. Gates was in prison for contempt, the order was that he be "committed to jail, there to remain until the further order of the court;" and Kent, C. J., for the court, said: "The prisoner must be remanded."

This Court has in two cases acted on this view of the law. In *State* v. *Bridge Co.*, 16 W. Va. 890, the order of the Court was "that the said Murtha Walsh and George W. Green, and the said Harper's Ferry Bridge Co., for their misconduct, and contempt of this Court, be each fined, for the use of the State of West Virginia, $50.00; that execution for its fine be awarded against the Harper's Ferry Bridge Co.; and, further, that said Green and Walsh do each pay the one-half of $46.10, the costs incurred by J. M. Mason in these proceedings, or by the State of West Virginia, which he must pay; and that said fines and costs imposed on them shall be paid to the sheriff of Jefferson county within ten days from the time the judgment in this case is entered, and in default thereof the sheriff of Jefferson county must be commanded in the name of the State of West Virginia, to arrest either of said parties who may be in default, and commit him to the jail of Jefferson county until the said amount due from them is paid, or until this Court shall

order his discharge." In *State* v. *Frew*, 24 W. Va. 493, fines for contempt were imposed, and the sheriff was ordered to hold them in custody until the fine and costs were paid. It is true that, in both these cases, the fines were fixed and determined, but, that the defendants should obey this order, they were to be imprisoned until it was paid.

Whether the Legislature would have the right to take away any of the substantial powers of the court for its own protection, will not be here discussed. It was discussed in *State* v. *Frew*, 24 W. Va. 416. It was not the intention of the Legislature to take away the power of the court as it theretofore existed, or to interfere with its discretion to imprison at pleasure one who disobeys the order or process of the court. It is necessary that a court should exercise this power in the way best to accomplish the object, and to do that the 'court must have a large discretion. The change made by the statute is that all contempts now are in the nature of criminal offences; and although the rule may be issued in the original suit, when it is returned served on the defendant, then the contempt proceeding must be entitled in the name of the State against the offender, and prosecute to the end in the name of the State, at the relation of the party injured, and be entirely separate from the original case. The fines now imposed must all be paid to the State. The costs of the contempt proceeding are paid to the party at whose relation the proceeding is prosecuted, if the party is convicted of the offence, but he must pay the costs, if the. party is not held to have been guilty of a contempt. So, while it is in the nature of a criminal proceeding, it is not in fact so, as all the incidents of such a proceeding do not belong to it. As we have seen, the right in certain causes to imprison during the pleasure of the court is not taken away.

There is an expression in the opinion in *Ruhl* v. *Ruhl*, 24 W. Va. 286, that is contrary to this position. It says: "It is also erroneous because it failed to define the term of imprisonment. It directs the commissioner to be imprisoned 'until the further order of the court.' Even if it had been proper to commit the appellant, the order should have

shown a conviction of the offence, and the terms of his imprisonment should have been defined." For this it cites *In the matter of Hammel*, 9 R. I. 248, and *Ex parte Adams*, 25 Miss. 883.

In the case in 9 R. I., Hammel had been summoned as a witness before a town council, and refused to testify, and he was thereupon committed to jail; and the court, on *habeas corpus*, discharged the prisoner, because there was no definite term of imprisonment mentioned in the mittimus. There are no authorities cited, and no reasons given. In the case of *Ex parte Adams*, 25 Miss. 891, it appears that the order of an inferior court was that "George H. Adams be sent to jail, and remain there until he signified his assent to the court to answer questions to the grand jury," etc.; and the High Court of Error and Appeals of Mississippi held that it was not lawful to imprison until conviction by a court of legal authority, which conviction must appear by the record. It is not said here, in this case, that the sending the prisoner to jail "until he should answer the questions required" would have been unlawful if the record had shown that he had been convicted of a contempt. It seems to me that both these cases show on their face that it is a very necessary power to be lodged in court, to compel a recalcitrant witness to obey the order of the court, to "order to jail [after convicting him of the contempt] until he is willing to obey the command of the court and testify; otherwise, it would be in the power of the irresponsible witness to defy the court, and the administration of justice would be not only impeded, but in some cases prevented. It was not necessary to the decision of *Ruhl* v. *Ruhl*, 24 W. Va. 286, to hold, in the language of the opinion,—and, as it is not in the syllabus, we feel no hesitation in saying that we now disapprove so much of said opinion as holds,—that in a contempt case generally, that the term of imprisonment must be fixed, and that courts in such cases have no right to imprison "until the further order of the court."

We think the proceeding was regular in this case, except that the proceeding was in chancery, and the order was entered in the chancery order-book, instead of the law order-book. This was irregular, and if it was right in

itself, we would reverse it, because the case was tried in the wrong court, and order placed on the wrong record, and showed it was a proceeding in chancery, and not at law, which only had jurisdiction of it after the return of the rule, and the separation of the proceeding from the chancery suit. In the syllabus in *Ruhl* v. *Ruhl*, the word " attachment" is inadvertently used, as the opinion shows. It ought to be "the proceedings," after a rule to show cause why an attachment shall not issue has been returned served on the defendant, should be distinct from the suit, etc. The same inadvertence occurs in the opinion in *State* v. *Bridge Co.*, 16 W. Va. 874. In some of the States, the attachment issues in the first instance, and the party is arrested, and brought into court, and then tried; but in Virginia and this State a rule must issue. *Morris* v. *Creel*, 1 Va. Cas. 333.

Were the defendants, Irwin and Hoyt, guilty of contempt of court? The record shows that the injunction, in accordance with the requirements of the statute, was not to take effect or be in force " until after bond was filed by the plaintiff." The conditional injunction was granted on the fourteenth of July, 1886. A notice was given to dissolve and on the eighteenth of August the court declared the injunction dissolved, and should stand dissolved until a bond in the increased penalty of $1,000.00 should be given. The effect of this order was only to require the bond to be increased. The decree dissolving the injunction amounts to nothing, because no injunction was in force, and could not be until bond was given. Some three days after this second order, the first conveyance of which the plaintiff complains was executed, and the others about the thirty-first of August, 1886.

But it is insisted by counsel that the injunction was so far in force as to make them liable for contempt if they violated it. In an anonymous case, 3 Atk. 567, it was held " no excuse for proceeding at law, after an injunction is granted, that it was not sealed; for where a defendant or his attorney has been prevented on an order for an injunction, and they have proceeded at law before it has been sealed, the court has considered it a contempt, and has committed

the persons for it." In *Kimpton* v. *Ere*, 2 Ves. & B. 349, it was held that there was a breach of an injunction when the defendants had notice of it, and there had been no service of the order. To the same effect is *Vansandau* v. *Rose*, 2 Jac. & W. 264. In *Hearn* v. *Tennant*, 14 Ves. Jr. 136, it was held a contempt by breach of injunction by persons present in court during the motion, though absent when the order was made. Lord Eldon said : " If these parties, by their attendance in court, were apprised that there was an order, that is sufficient; and I cannot attend to a distinction so thin as that persons standing here until the moment the lord chancellor is about to pronounce the order, which, from all that passed, they must know will be pronounced, can, by getting out of the hall at this instant, avoid all the consequences." In *James* v. *Downes*, 18 Ves. Jr. 522, it was held that it was a contempt by breach of injunction by defendant present in court during the motion, though retiring before the order was pronounced; but a motion to commit after a considerable lapse of time, and the order not drawn up, was refused, with costs. The same rule has been held in this country. *Hull* v. *Thomas*, 3 Edw. Ch. 236; *Thebaut* v. *Canova*, 11 Fla. 166; *Haring* v. *Rauffman*, 13 N. J. Eq. 399; *Endicott* v. *Mathis*, 9 J. N. Eq. 110; *Farnsworth* v. *Fowler*, 1 Swan. 1.

This is well-settled law. If the defendant knew an order of the court had been made, and he had actual notice of it, even before the formal service of process, he could not shield himself if he violated the order on the ground merely that the process was not served. He must respect the order of the court when he knows it is made. The service of process usually gives him that notice, but he may receive it in another mode. It may be that, if a conditional injunction has been granted, to take effect on bond being given, and the defendant knows the bond is about to be given, that he may be guilty of a contempt of court in doing a thing that would be enjoined immediately upon the execution of the bond. This point need not be decided in this cause. In *Winslow* v. *Nayson*, 113 Mass. 411, it was held that one who has actual notice of an order for the immediate issue of an injunction, and disobeys the terms of it as ordered, is

guilty of a contempt, though the injunction has not been served upon him, or issued, or the order formally drawn up; but, where it is ordered that an injunction shall issue upon the filing of the bill, such order is conditional, and there is no injunction, and can be no contempt, until the bill is filed. In *Clarke* v. *Hoome's Ex'rs*, 2 Hen. & M. 23, an injunction was granted *on the usual terms*—that is, upon the giving of bond—to inhibit the defendants from selling a slave under an execution. This order was made on the twenty ninth day of May, 1808. On the next day the order was shown to the defendants at the sale, and they were forewarned from selling the negro. The plaintiff then proceeded with all possible dispatch to Richmond, and, upon complying with the conditions of the order, obtained from the clerk the subpœna, with injunction indorsed thereon; but, when he returned to the county of *Powhattan*, the sale had been made, and the agent of Hoome's executors had bought and carried off the negro The plaintiff obtained a rule upon the sheriff and the said agent to show cause why they should not be attached for their contempt in disobeying the order of the judge. They appeared and showed cause. The court said: "The order in this case which it is said has been disobeyed was a conditional one; and, before it could have any obligatory force, it was the duty of the plaintiff to comply with the conditions. This had not been done when it was presented to the defendants, although the plaintiff knew of the sale long enough to have made his application for his injunction, to have complied with the conditions usual in such cases, and to have been at the sale if he had been so disposed; and therefore he should not complain that for want of time his property was sold. Again, the sheriff was acting under the process of a court of law, and was bound to obey its commands, unless, agreeably to law, he was inhibited." The rule was discharged.

Here, as we have seen, the order, as under the statute it must be, was a conditional one. There was no sort of diligence used to comply with it. The order was made on the fourteenth day of July, 1886. No bond was executed until the eleventh day of October, 1886. The plaintiff was bound to know the law, and he therefore knew that his injunction

was conditional, and, by its very terms, it was not to be inforced until he executed a bond of $250.00. Then when the motion was made to dissolve an injunction which never existed until long after, and also to increase the bond if motion to dissolve were denied, the court still gave the plaintiff another opportunity to comply, after requiring a bond in the penalty of $1,000.00. There was no attempt, so far as this record shows, to give the bond until near two months afterwards. When all the mischief complained of had been done and past for more than a month, plaintiff gave the bond, filed his affidavit, and obtained a rule against the defendants, Irwin and Hoyt, to show cause why they should not be attached for contempt of an injunction, that, clearly, had no existence in fact for more than a month after the last act complained of had been committed.

No contempt is shown. It is unnecessary to decide whether the affidavit was sufficient to support the rule, or whether the court erred in the form of the order of attachment for contempt. Certainly, the court had no authority to imprison the defendants until they did an impossible thing.

For the foregoing reasons the order of the Circuit Court, rendered on the thirteenth October, 1886, is reversed, with costs to the defendants, Irwin and Hoyt, and the rule against the said defendants is discharged with costs.

REVERSED.