# CHARLESTON.

Ex Parte Ira Kirby *et als.*

(No. 5556)

Submitted September 29, 1925. Decided October 6, 1925.

1. CONTEMPT—*If Order of Court Has Been Disobeyed, and Case is Urgent or Contempt Flagrant, Court May Issue Attachment Without Usual Antecedent Rule.*

   When an order of a court has been disobeyed and the case is urgent or the contempt flagrant, the court may issue an attachment in the first instance without the usual antecedent rule. (p. 72.)
   (Contempt, 13 C. J. § 93).

2. SAME—*One Detained in Contempt Proceeding, Who Has Made no Effort to Obtain Hearing Before Trial Court or Judge, is Not Entitled to Discharge in Habeas Corpus Proceedings for Delay.*

   One detained in a contempt proceeding, who has not made any effort to obtain a hearing before the trial court or judge,

is not entitled to a discharge in Habeas Corpus on the ground of delay.    (p. 76.)

(Contempt, 13 C. J. § 113).

3.  HABEAS CORPUS—*Party Imprisoned Under Order of Judgment of Court Having Jurisdiction to Make Order Cannot be Discharged on Habeas Corpus, Regardless of Error Therein.*

Point 3 of the syllabus in *Ex Parte Mooney* 26 W. Va. 36 applied.    (p. 77.)

(Habeas Corpus, 29 C. J. § 19).

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Original petition of Ira Kirby, Andy Workman, and others for a writ of habeas corpus to be directed to the Sheriff of Taylor County.

*Andy Workman discharged; relief denied the other petitioners.*

. *W. P. Samples* and *G. W. Ford,* for petitioners.
*Robinson, Warder & Robinson,* for respondents.

HATCHER, JUDGE:

Upon the petition of Ira Kirby and seventeen others, a writ of Habeas Corpus issued from this court to the sheriff of Taylor county requiring him to show cause why the petitioners are detained.  The return of the sheriff states that he arrested and detains the petitioners by virtue of a writ of the circuit court of said county, dated Sept. 18, 1925, which directed him so to do.  From that writ and the other exhibits in the case, it appears that a rule was issued on Sept. 2, 1925, by the judge of said circuit court in vacation, and served on thirteen of the petitioners, requiring them to appear before him on Nov. 9, 1925, that being the first day of the next regular term of said court, then to answer the alleged violation of an injunction order of the said judge; and that upon an affidavit charging seventeen of the petitioners with a subsequent violation of the injunction, another order was entered by said judge in vacation, on Sept. 18, 1925, directing an attachment to issue against seventeen of the petitioners.  This

attachment was also made returnable Nov. 9, 1925. The order provided that bail could be had by each of the contemnors in the sum of $500.00.

The petitioner Andy Workman, is not named in either the order of the court or the writ issued pursuant thereto by the clerk. The relief prayed for is therefore granted him.

Counsel for petitioners contend (1) that the attachment is virtually a commitment to jail without a hearing and is unlawful because it was not preceeded by a rule; and (2) that the circuit judge had the right to summarily try the petitioners in vacation, and the postponement of the hearing until Nov. 9, 1925, violated the constitutional right of the petitioners to a trial without unreasonable delay.

First. We are cited *Ex Parte Mylius,* 61 W. Va., 405; *State* v. *Irwin,* 30 W. Va. 421 and *Morris* v. *Creel,* 1 Va. Cases, 333, as decisions holding that a rule to show cause must be served before attachment issues. In those cases the petitioners, without a hearing, had severally been adjudged guilty of contempt and attachments had issued. So far as the holding of the court applied to the facts in each case, it was correct; but it does not apply to every contempt case. The history of contempt proceedings shows that the law concedes to judges and courts the inherent right and authority to issue an attachment in the first instance, without an antecedent rule, where the case is urgent or the contempt is flagrant. 13 C. J. par. 93, p. 68-69. In the case of *Rex* v. *Earl Ferrers,* 1 Burr 631, decided in 1758, the court of the King's Bench issued an attachment on an affidavit without a rule to show cause, against even so important a person in that day, as a peer of England, he, according to the affidavit, having disobeyed an order of the court. *Thomas* v. *Cummins,* 3 Penn. 1, decided in 1791, asseverated this authority in the following brief opinion:

> "Mr. Sergeant *pro quer,* moved for a rule to show cause on the defendant why an attachment should not issue against him, upon an affidavit that a writ of estrepement had been served on him in this cause, and that he had afterwards declared he

would go on committing waste, notwithstanding
the power of the justices.

The court declared that they need not in such
case give a rule to show cause, but upon such highly
improper expressions would grant the attachment
in the first instance, the defendant having set at
naught the powers of the court; and the attach-
ment was accordingly issued.''

This right is reiterated in the more recent case of *Petrie*
v. *People,* 40 Ill. 334:

> ''Where the defendant in a suit in chancery for
> divorce neglects to obey an order therein to pay
> alimony *pendente lite,* an attachment may be issued
> against him for contempt, without any notice to
> him that an attachment would be asked, or any rule
> to show cause why it should not be issued.''

While the usual practice in West Virginia is to issue a rule
to show cause in the first instance, the right to issue an at-
tachment without a rule, is stated in *State* v. *Frew and Hart,*
24 W. Va. 416.

> ''Where a contempt is not committed in open
> court, the usual course is to issue a rule to show
> cause why an attachment should not issue, though
> the attachment sometimes issues in the first in-
> stance.''

This right is also distinctly recognized by the Legislature
in section 27, ch. 147 of the Code, which limits the right of
courts to punish for contempts in some cases, but leaves them
untrammeled in case of ''disobedience—to any lawful process,
judgment, decree or order of the said court.''

The injunction in this case had been issued for the purpose
of allaying trouble in an industrial struggle. By reason of
the gravity of the situation, a violation of that injunction de-
manded quick redress. A rule to show cause for a prior
violation had already been served on thirteen of those at-
tached. If they were guilty of a second and wilfull disobed-

ience of the injunction, as the affidavit filed with the judge asserts, their contempt was indeed flagrant. The judge had the authority therefore, without a preceding rule, to direct the attachment of those named in his order. The attachment herein is merely *the process* of the court, and serves the same purpose as a warrant or other writ whereby an accused is apprehended and held for trial. The order directing the attachment does not purport to find the petitioners guilty, but extends to them an opportunity to be heard on Nov. 9th., wherein it is different from the cases of *Ex parte Mylius* and the other cases cited in which the circuit court had determined the guilt of the offenders without giving them a hearing.

Second. By virtue of section 27, chapter 147 of the Code, *Petrie* v. *Buffington,* 79 W. Va. 113, specifically declares that the judge of the circuit court may hear contempt cases in vacation:

> "A judge of a circuit court has authority, in vacation of the court, to punish for a contempt for a disobedience to a lawful order of such court."

Having the authority to try petitioners summarily, has the delay in this proceeding caused the lower court to lose its jurisdiction? We are mindful of the constitutional right of the accused to a trial without unreasonable delay. We are not unmindful that it is an outstanding principle of the common law that no man may be unreasonably detained in prison without a trial. Yet it is an equally well established principle that the peace and security of the people require that one who has become a menace thereto be detained upon a mere charge of crime. The law has harmonized these two principles by according to the State the right to hold in custody one accused of crime, upon the express guaranty of a speedy trial. What period between arrest and trial constitutes a speedy trial? What duration of time is unreasonable delay? The constitutions of the several states furnish no definition of these terms. Despite Magna Charta, the Petition of Rights, the Bill of Rights, and other English bulwarks of

personal liberty, a prisoner might languish in jail under the common law, for so long as six months without a hearing. After describing the methods used to liberate prisoners, Blackstone says: ''So that one way or other, the goals are in general cleared, and all offenders tried, punished or delivered twice in every year; a constitution of singular use and excellence.'' IV Blackstone, 270. The common law recognized, as the legislative bodies of the several states have done, that one accused of crime could not in most cases be given a trial immediately following the accusation. Unless the trial is to degenerate into a farce and the guilty go free, reasonable time in which to fairly prepare for the prosecution is imperative. So in most if not all jurisdictions, there are legislative enactments in aid of the constitutional provisions, giving to the state a definite period in which to arraign or bring to trial those charged with crime. These requirements vary with the several states. In our state one statute provides that a person imprisoned on a criminal charge shall be released from custody if he be not indicted before the end of the second term of the court to which he is held to answer. Sec. 12, ch. 158, Code. As the regular terms of the circuits are usually about three months apart, a prisoner could be detained approximately six months in jail in this state before the statute would release him, if he were arrested immediately following the adjournment of a term of the court. Another statute discharges one indicted for a felony ''if there be three regular terms of such court, after the indictment is found against him, without a trial,'' etc. Sec. 25, ch. 159 Code. It therefore appears that a delay for any period less than the time intervening between three terms of a circuit court, is not deemed unreasonable delay by the legislative mind. In no state have we found a decision holding that a shorter time than that prescribed by the Legislature for the purpose of hastening trials is unreasonable delay.

Under our practice ''a contempt is in the nature of a criminal offense and the proceeding for its punishment is criminal in its character.'' *State* v. *Irwin,* 30 W. Va. 404. We realize that the State, acting through the prosecuting attorney, has many cases to prepare for trial at the November

term of the circuit court of Taylor county. We know that it requires time to discover evidence, locate and subpoena witnesses and make other preparation for a term of court. If the State had no other cases to prepare for trial except the one against these petitioners, the delay in this case might appear unreasonable; but taking into consideration the time necessary to prepare this case in conjunction with many other cases, and keeping in mind the time allowed for the prosecution of those accused, by the Legislature, we cannot arbitrarily say that the postponement of the trial herein until the November term of the circuit court, constitutes the unreasonable delay forbidden by the constitution.

The record discloses no request or attempt of any kind by the petitioners to secure a speedy hearing before the circuit judge. Under the majority rule prevailing throughout the States, the petitioners are therefore not in position at this time to seek relief here on the ground of unreasonable delay.

> "A prisoner who has never demanded or been refused a trial cannot by *habeas corpus* invoke the constitutional guaranty of a speedy public trial by an impartial jury as a right entitling him to be discharged."

4 Texas, 426.

> "As to what constitutes a speedy trial, and what action must be taken by the accused to avail himself of the right to a dismissal because of delay, the authorities are conflicting. Except in so far as statutes may otherwise require, we think the rule should be that a demand for trial, resistance to postponement, or some other effort to secure a speedy trial on the part of the accused, should be shown to entitle him to a discharge on the ground of delay."

*State* v. *Lamphere,* 20 S. D. 98, 104 N. W. 1039.

That we are committed to the majority rule appears from the opinion in *Ex parte Beavers,* 80 W. Va. 34.

> "A party cannot defy the authority of a court in which he is a litigant, disobey its process and or-

ders, go to jail for his contempt of its authority and then obtain his liberty from another court, without having made the semblance of an apology. He must submit himself to the authority of the trial court, by purging himself of the contempt and then make application to it for such relief as he is entitled to claim. *Ex parte Spencer,* 83 Cal. 460; *Ex parte Wilson,* 75 Cal. 580; *Ex parte Cotrell,* 59 Cal. 417; *Galland* v. *Galland,* 44 Cal. 475; Oswald, Contempt, p. 253. It is the court whose mandate has been violated and whose dignity has been brought into disrepute by the commission of the contempt before which relief from punishment should, in the first place, be sought by a motion therein on behalf of the contemnor to vacate the proceedings.'' 4 Ency. Pl. and Pr. 807. *People* v. *Murphey,* 1 Daly (N. Y.) 462.

Time might show that the postponement of the hearing in this case was longer than was absolutely necessary for a fair preparation. But if so it would simply demonstrate that the circuit judge had erred in his estimate of the time required for such preparation. In Habeas Corpus the sole question is one of jurisdiction, which once acquired, is not lost by such an error.

"When a party is imprisoned under a judgment or order of a court having jurisdiction to make such order, he cannot be discharged on *Habeas Corpus* however erroneous such judgment or order may be."

*Ex parte Mooney* 26 W. Va. 36.
*Ex parte O'Connor* (Cal.) 155 Pac. 115.
Bailey Habeas Corpus P. 265 Sec. 73.
Church Habeas Corpus Sec. 331.

Appellate Courts are reluctant to interfere in any way with the disciplinary measures of trial courts. The efficient administration of court affairs requires that a trial court be not hampered in its handling of contempt cases. We should intervene only when there has been manifest abuse of authority. We take judicial notice that the judge of the

circuit court of Taylor county is also the judge of the circuit court of Barbour county, and that there is a regular term of the circuit court of Barbour county in the month of October. We are not informed of the time usually required to hold the October term of said court. The record furnishes no information of the other official engagements of this judge. The petitioners do not allege that forthwith upon their arrest, or at any date appreciably earlier than Nov. 9, 1925, the judge has had or will have ample time to hear their case, or that the state has had or will have ample time to prepare for trial. There is nothing in the record to indicate that the judge knew or should have known that the petitioners would be quickly apprehended, or that he is now aware of their incarceration.

The course followed by the judge in this instance is not at all unusual. It is a common occurrence in this state, for a court to direct an attachment to be issued for an absent witness or other delinquent or recalcitrant person, returnable at the next term of the court. If such person is arrested between the terms, he is imprisoned unless he gives bond. His situation is in no way different from that of the petitioners. The fairness and good faith of a circuit judge in directing an attachment in the ordinary case returnable at the next term of his court is rarely if ever questioned. Why question it in this case? The record discloses no fact impelling the belief that it should be questioned. We cannot assume that there was bad faith without some evidence upon which to base the assumption.

For the reasons given, the relief prayed for will be denied to all the petitioners except Andy Workman.

*Andy Workman discharged. Relief denied the other petitioners.*