294 S.E.2d 96

**CHESAPEAKE & OHIO SYSTEM FEDERATION, BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES**

**v.**

**Boyd A. HASH, et al.**

**No. 15046.**

Supreme Court of Appeals of West Virginia.

June 30, 1982.

Hostler & Shinaberry and Stanley M. Hostler, Charleston, for appellant.

John H. Hankins, Beckett, Burford & James and Robert H. Burford, Huntington, for appellees.

McGRAW, Justice:

This appeal is brought by the Chesapeake & Ohio System Federation, Brotherhood of Maintenance of Way Employees, an unincorporated association, from a declaratory judgment of the Circuit Court of Cabell County entered March 7, 1980, which held that the appellee, Boyd A. Hash, was entitled to receive monthly pension benefits from the Federation. The Federation also challenges a final order of that court entered July 18, 1980, which ordered the incarceration of the officers of the Federation for the association's disobedience of the judgment of March 7, 1980, and of a prior judgment entered February 10, 1977. The Federation contends that since it is an unincorporated association, the circuit court had no jurisdiction to enter the declaratory judgment or to direct the imprisonment of the officers of the Federation for contempt.

The Federation represents some 1,600 employees of the Chesapeake & Ohio Railroad Company in West Virginia, Virginia, Ohio, Kentucky, Michigan and in the Dominion of Canada pursuant to provisions of the Railway Labor Act, 45 U.S.C.A. § 151 *et seq.*, as amended. The appellees are former officers and employees of the Federation who, with the exception of appellee Hash, had retired prior to 1970. The Federation is affiliated with the Brotherhood of Maintenance of Way Employees, an unincorporated labor association, and is governed by the constitution of the parent organization. In addition the Federation has its own by-laws which provide for a convention of its delegate body every four years. In 1955, at its quadrennial convention, the Federation established a pension plan for its full-time officers and representatives to provide supplemental pension ben-

efits in addition to those received by qualified employees pursuant to the Railway Labor Act. Appellee F. H. Crance was the chief officer of the Federation at this time. Between 1955 and 1970, the appellees contributed a total of $18,311.25 from their wages to the pension fund. The Federation in turn contributed $54,618.00 from its general fund on behalf of the appellees. In 1970, the pension plan was discontinued upon motion of the chief officer of the Federation at that time, appellee Hash. No contributions were made to or received by the pension fund after January of 1971.

On September 19, 1972, the Federation instituted an action in its own name for declaratory judgment in the Circuit Court of Cabell County to determine if the Federation was required to pay monthly retirement benefits to the appellees pursuant to the supplemental pension plan. No officer or individual member of the Federation was joined as a party plaintiff. By order entered February 10, 1977, the circuit court held that the Federation's abolition of the pension plan was void with respect to those participating members whose rights had vested prior to the discontinuance of the plan and ordered the Federation to pay benefits accrued under the plan with interest. The court further ordered the Federation to have an actuarial study made to completely fund the pension plan or to continue to supplement the plan on a monthly basis in order to make specified payments to the participants.

On March 18, 1977, the Federation filed with this Court a petition for appeal, which was subsequently denied. The Federation's petition for rehearing was denied December 12, 1977. On February 22, 1978, the appellees herein filed a motion for entry of judgment in the circuit court. On February 27, 1978, officers of the Federation filed a motion to intervene as individuals, members, officers and representatives of the Federation for the purpose of raising the issue of the circuit court's jurisdiction to adjudicate the case. The circuit court ordered a hearing on the matter on March 31, 1978, and denied the motion to intervene by order entered October 17, 1978. The appellees herein contend that on the same day the court entered an order granting a stay of execution on condition that an appeal be filed within 30 days from September 1, 1978, that no appeal was taken, that on October 2, 1978, the Federation filed with this Court a petition for a writ of prohibition to restrain enforcement of the previous judgment and that this Court denied the petition on December 12, 1978. There is nothing in the designated record to support these contentions.

On September 21, 1979, the circuit court entered a judgment in favor of all the appellees, with the exception of appellee Hash, for specific accrued benefits under the pension plan. The court held in abeyance decision upon the claim of appellee Hash, who retired in 1975, until a further determination could be had on his case. On March 7, 1980, the circuit court entered an order finding appellee Hash entitled to specific accrued and future retirement benefits under the pension plan and directing the Federation to pay the same. The Federation filed a motion for a stay of execution pending appeal on March 17, 1980, which was denied by the circuit court on May 2, 1980. On April 11, 1980, counsel for the appellees moved the circuit court to issue a rule to show cause why the Federation should not be held in contempt for failure to comply with the judgements rendered February 10, 1977, and March 7, 1980. On July 18, 1980, the circuit court granted the motion, finding the Federation "in willful and deliberate contempt of this Court for its failure to fund and pay under the pension plan as ordered" by the prior decisions of the court and ordering the incarceration of the officers of the association in the Cabell County Jail if the Federation should fail to comply with the court's orders within sixty days. A writ of execution was issued by the Clerk of the Circuit Court of Cabell County ordering seizure of an automobile owned by the Federation. On August 21, 1980, this Court, acting in vacation, granted a suspension of the orders of the circuit court entered March 7, 1980 and July 18, 1980, pending application for appeal.

## I.

The Federation does not raise any question in this appeal with respect to the merits of the circuit court's decision in the declaratory judgment action. Instead the Federation contends that the lower court was without jurisdiction to act because suit was brought in the name of the Federation, an unincorporated association. The Federation's challenge to the circuit court's assertion of personal jurisdiction is predicated upon the common law rule, long recognized in this jurisdiction, that in the absence of statutory authority, an unincorporated association may not sue or be sued as a legal entity in its own name. This rule was recently reiterated by this Court in Syllabus Point 4 of *City of Fairmont v. Retail, Wholesale, and Department Store Union*, 166 W.Va. 1, 283 S.E.2d 589 (1980).

> "In the absence of a statute or rule of practice authorizing such procedure, an unincorporated society or association can not be sued as an entity by its name, nor can judgment be rendered against it, merely by name; but to confer jurisdiction, the members composing the association, or some of them, must be named as parties and process served upon them individually." Syllabus Point 2, *State ex rel. Glass Bottle Blowers Association v. Silver*, 151 W.Va. 749, 155 S.E.2d 564 (1967).

*See also* Syl. pt. 1, *West Virginia Secondary Schools Activities Commission v. Wagner*, 143 W.Va. 508, 102 S.E.2d 901 (1958); Syl. pt. 1, *Milam v. Settle*, 127 W.Va. 271, 32 S.E.2d 269 (1944); Syl. pt. 1, *West v. Baltimore & Ohio R. Co.*, 103 W.Va. 417, 137 S.E. 654 (1927); Syl. pt. 1, *Simpson v. Grand International Brotherhood of Locomotive Engineers*, 83 W.Va. 355, 98 S.E. 580, *cert. denied*, 250 U.S. 644, 39 S.Ct. 494, 63 L.Ed. 1186 (1919). The Federation contends that since suit was brought in the name of the association only, without joining any of its officers, representatives or members as parties plaintiff, the proceedings had below in the declaratory judgment action were void *ab initio*.

The appellees respond that the Federation waived the issue of its capacity to sue by its failure to object to the jurisdiction of the circuit court prior to judgment on the merits and that the question cannot be raised for the first time on appeal. The appellees also assert that the Federation is given legal entity status and is authorized to maintain suit in its own name by virtue of provisions of the Labor-Management Relations Act, W.Va.Code § 21–1A–7 (1981 Replacement Vol.). The Federation counters this latter argument with the assertion that even if the statute authorizes labor organizations in general to maintain suits as entities in their own names, unincorporated labor organizations, such as the Federation, which are subject to the Railway Labor Act, 45 U.S.C.A. § 151 *et seq.*, are specifically exempted from the provisions of the Labor-Management Relations Act. W.Va.Code § 21–1A–2(a)(2) (1981 Replacement Vol.).

■ None of these arguments seems germaine to the case at hand. The disposition of the issue here is governed by the statute under which suit was brought, the Uniform Declaratory Judgments Act, W.Va.Code § 55–13–1 *et seq.* (1981 Replacement Vol.). W.Va.Code § 55–13–2 provides:

> Any person interested under a ... written contract, or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Section 13 of the Act defines the word "person" to mean "any person, partnership, joint-stock company, *unincorporated association or society*, or municipal or other corporation of any character whatsoever." (Emphasis added.) The language of this statute clearly authorizes suits by unincorporated associations in the association name and confers upon any such organization the status of a legal entity for pur-

poses of invoking the jurisdiction of the circuit court in declaratory judgment actions.

■ Moreover, although no question was raised by the parties as to the authority of counsel for the association to institute and prosecute the declaratory action, we note that in this jurisdiction "there is a presumption that no attorney would institute ... suit without authority. It would be inconsistent with his duty and obligation as an officer of the court." *State v. Ehrlick*, 65 W.Va. 700, 704, 64 S.E. 935, 937 (1909). It would also be inconsistent with his ethical obligation to represent his client zealously within the bounds of the law. *See* Code of Professional Responsibility, Canon 7, EC 7–7. When counsel for an unincorporated association institutes a declaratory judgment action in the name of such association under the provisions of W.Va.Code § 55–13–1 *et seq.*, he is presumed, in the absence of a showing to the contrary, to be acting on behalf of and by the authority of the association in bringing suit, and the association is bound by his acts. Once the jurisdiction of the court has been properly invoked by counsel, the association cannot later complain of lack of jurisdiction merely because an adverse judgment was rendered against it.

■ Consequently, we conclude that the circuit court had jurisdiction over the Federation in the declaratory judgment action below. In view of our resolution of this issue it is unnecessary to address the other issues raised by the parties on this question.

## II.

The Federation also challenges the jurisdiction of the circuit court to hold the association in contempt of court for disobedience of the court's orders in the declaratory judgment action. It is undisputed that the Federation did not comply with the circuit court's orders for payment of benefits to the appellees. The Federation's contention is predicated upon its argument, *supra*, that the declaratory judgment proceedings were void for having been prosecuted in the name of an unincorporated

association as an entity. Since we have determined that the Federation was statutorily authorized to maintain the action below in its association name, and that the judgment rendered therein was not void on that ground, we must conclude that the circuit court had jurisdiction of the Federation in the contempt proceeding.

The Federation also contends that the circuit court lacked jurisdiction to order the incarceration of the individual officers of the Federation until such time as the union began paying accrued benefits under the pension plan. The record shows that the contempt proceeding was brought only against the Federation and that none of its officers or representatives were named as alleged contemnors. Notice of the contempt hearing was served upon counsel for the Federation, who subsequently filed a statement in opposition to the motion of contempt and appeared at the contempt hearing on behalf of the Federation. It also appears that one of the officers of the association was present at the contempt hearing as a spectator but was not represented by counsel and offered no evidence. It is conceded that none of the individuals ordered incarcerated by the circuit court's contempt order was personally served with notice of the contempt hearing or with a copy of the contempt citation. The circuit court found the Federation in contempt of court and ordered the incarceration of its officers.

■ We think the circuit court's contempt order was void in that it directed the commitment of the Federation officers to jail. First, it is clear that none of the individuals ordered incarcerated was served with notice of the contempt proceeding or offered an opportunity to be heard. A proceeding to punish for contempt of court, either criminal or civil, is criminal in character. *Hendershot v. Hendershot*, 164 W.Va. 190, 263 S.E.2d 90 (1980); *State ex rel. Arnold v. Conley*, 151 W.Va. 584, 153 S.E.2d 681 (1966). The alleged contemnor is subject to incarceration or fine if he is found guilty of the contempt and is therefore entitled to certain fundamental procedural safeguards to insure that he is

not deprived of his liberty or property without due process of law. The most basic of the procedural safeguards guaranteed by the due process provisions of our state and federal constitutions are notice and the opportunity to be heard, which are essential to the jurisdiction of the court in any pending proceeding. *State ex rel. Staley v. Hereford*, 131 W.Va. 84, 45 S.E.2d 738 (1947).

■ It is elementary to say that before an individual may be committed to jail for contempt of court, he must be served with adequate notice of the charge and afforded an opportunity to be heard and to defend. In *Ex parte Mylius*, 61 W.Va. 405, 56 S.E. 602 (1907), the Court held void a contempt proceeding in which the defendant was not served with adequate notice. The Court stated:

> [J]udgment without legal notice or citation is utterly void. Legal notice of the pendency of a proceeding in court is indispensable to a judgment that has any force....
>
> Mylius had right to a hearing, to a day in court, and to purge himself of contempt before being sent to prison. By proper proceeding, upon return of the rule, legally served, a formal attachment should have been awarded to attach Mylius by his body and bring him before the court to answer for contempt. He might then and there pay the money, and thus obey the order of the court, or he might show some excuse for nonpayment. *State v. Frew*, 24 W.Va. 416, Am.Rep.

257; 4 Ency.Pl.&Prac. 783, 784. If, when brought into court, he should not exculpate himself, then the court could order him to stand committed; that is, be sent to jail. 61 W.Va. at 407–408, 56 S.E. at 603.

The necessity of notice and a hearing in contempt proceeding was reaffirmed recently by this Court in *Hendershot v. Handlan*, 162 W.Va. 175, 248 S.E.2d 273 (1978).[1]

■ The form of the notice to be given an alleged contemnor has been established by prior decisions. When the contempt charged by motion or petition to the court is disobedience of a lawful judgment or decree the usual course is to issue a rule to show cause why the defendant should not be held in contempt. *State v. Frew*, 24 W.Va. 416 (1884).[2] "A rule to show cause why a person shall not be adjudged guilty of contempt must be served in person upon the party charged." Syl. pt. 1, *Ex parte Mylius, supra*. Clearly, the failure of the circuit court to obtain personal service upon the individual officers of the Federation renders void its order directing their incarceration.[3] While service of process was had upon of process was had upon counsel for the Federation, such service cannot support contempt proceedings against the officers of the association. *Ash v. Holdeman*, 15 Misc.2d 844, 182 N.Y. S.2d 34 (1958).

In addition, it is clear that only one of the officers of the association was present at

1. Other due process rights which have been afforded defendants in contempt proceedings include assistance of counsel, right to appointed counsel in case of indigency and right to a record of the proceedings. *Smoot v. Dingess*, 160 W.Va. 558, 236 S.E.2d 468 (1977).

2. On the other hand, if a person is present in court when fined for contempt, he need not be served with a formal written rule, but he must be allowed to make a defense. *Ex parte Mylius, supra; State v. Hansford*, 43 W.Va. 773, 28 S.E. 791 (1897).

3. It has been held that in certain circumstances one who is in contempt of court may be arrested without the issuance of a rule to show cause. In Syllabus Point 3 of *Hendershot v. Handlan, supra*, it was held:

"When an order of a court has been disobeyed and the case is urgent or the contempt flagrant, the court may issue an attachment in the first instance without the usual antecedent rule." Syllabus Point 1, *Ex parte Kirby*, 100 W.Va. 70, 130 S.E. 86 (1925).

*See also State v. Frew, supra*. In cases where such circumstances have been found, however, the attachment has been characterized as being in the nature of a capias, intended to bring an alleged contemnor into court to answer the contempt charges. In no case has it been held that such process may be used to jail an individual for contempt without first being offered an opportunity to answer the charges. It should be noted that some members of this Court have questioned the constitutional validity of the rule in *Ex parte Kirby. See Hendershot v. Handlan, supra*, 162 W.Va. at 196, 248 S.E.2d at 283 (Miller, J. dissenting).

the contempt hearing. In Syllabus Point 2 of *Ex parte Mylius, supra,* the Court held:

> "A judgment or order committing to jail upon a charge of contempt in disobeying a decree, made in the absence of the person, is void, and a person imprisoned under it will be relieved by a writ of habeas corpus."

The Court went on to explain this requirement.

> The judgment of imprisonment, having been rendered in the absence of Mylius, is utterly void, because ... any judgment of imprisonment must be in the presence of the accused. A court may impose a fine in his absence. It may try him, after legal notice, for a misdemeanor, without his presence; but never can it impose imprisonment without his presence. It must, by proper process, get him before the court in body. 61 W.Va. at 407–408, 56 S.E. at 603.

Since the circuit court's order of imprisonment was entered in the absence of all but one of the officers of the Federation, it is void for this reason as well.

 Finally it should be noted that the officers of the Federation were never made parties defendant to the contempt proceeding and were never found in contempt. Only the Federation was found to be in contempt for disobedience of the circuit court's prior orders. It is axiomatic that in our legal system an individual may not be imprisoned for a contemptous act unless he has first been charged with contempt and, after adequate process and hearing, found guilty on that charge. A circuit court cannot order the incarceration for contempt of a person who has neither been charged with or tried upon such a charge, merely because that individual stands in some relationship to an adjudged contemnor.[4]

For the reasons stated above we conclude that the circuit court had jurisdiction to hear and determine the declaratory judgment action instituted by the Federation but was totally without jurisdiction to or-

der the officers of the association incarcerated until such time as the Federation complied with the circuit court's orders. Accordingly, we reverse that portion of the circuit court's order which directed that the individual officers of the association be jailed for contempt.

Affirmed in part; reversed in part.

---

**4.** The Federation also raises the question of whether individuals who were not parties to the original order or decree, the disobedience of which gives rise to a charge of contempt, are liable in the first instance for contempt of court. In view of our disposition of this case we find it unnecessary to comment upon this issue.