510 S.E.2d 502

STATE of West Virginia ex rel.
John ZIRKLE, Petitioner,

v.

Honorable Fred L. FOX, II, Judge of the
Circuit Court of Marion County, and the
City of Fairmont, a Municipal Corpora-
tion, Respondents.

No. 25192.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 6, 1998.

Decided Dec. 8, 1998.

Jerald E. Jones, Esq., Norman T. Farley, Esq., West & Jones, Clarksburg, West Virginia, Attorneys for Petitioner.

Kevin V. Sansalone, Esq., Fairmont, West Virginia, Attorney for Respondents.

WORKMAN, Justice:

Mr. John Zirkle (hereinafter "Mr. Zirkle" or "petitioner") seeks a writ of prohibition preventing the enforcement of a June 1, 1998, judgment of the Circuit Court of Marion County, directing that Mr. Zirkle be incarcerated for civil contempt of court. We deny the requested writ.

### I. Facts

The City of Fairmont filed a "Petition for Abatement of Public Nuisance and Mandatory Injunction" against Mr. John Zirkle and Mr. Tulasi Joshi[1] on June 17, 1997. The City requested the lower court to enter an order declaring that certain real estate constituted a public nuisance, to issue a mandatory injunction requiring Mr. Zirkle to demolish a structure on the real estate which had been severely damaged by fire, and to require Mr. Zirkle to post bond with a corporate surety. On July 29, 1997, the lower court entered an order granting the mandatory injunction against Mr. Zirkle, finding also that Mr. Tulasi Joshi had no responsibility for the public nuisance. The lower court ordered Mr. Zirkle to demolish the structure and to post bond with corporate or other surety in the sum of $20,000.

On March 17, 1998, the City filed a petition asking the lower court to require Mr. Zirkle to appear and show cause why he should not be in contempt of court for failure to comply with the order of July 29, 1997. By order dated March 21, 1998, the lower court issued a rule against Mr. Zirkle requiring him to appear on May 13, 1998, to show cause why he should not be adjudged in contempt of court and to produce documents pertaining to his financial condition.

During the May 13, 1998, hearing, Mr. Zirkle's counsel argued that Mr. Zirkle did not have sufficient funds to comply with the lower court's order. Several financial documents were presented, including several years of income tax returns, current income information, and bank statements. Mr. Zir-

kle maintained that he owned no automobiles[2] or real estate other than the property on which the public nuisance was situated. Mr. Zirkle did not request the lower court to permit the presentation of witness testimony. Mr. Zirkle's income tax returns indicated that his income was $6100 in 1997, $8100 in 1996, and $6600 in 1995. The estimated cost of demolition was allegedly $12,000 to $15,000. Mr. Zirkle also contended that he had attempted to obtain a surety bond with three different bonding companies, but no insurance company would provide such a bond.

The City informed the lower court during the May 13, 1998, hearing that Mr. Zirkle owned stock, a five percent interest, in a Subway restaurant. The City also contended that a review of Mr. Zirkle's tax returns would reveal that he had claimed substantial depreciation expenses for operation of the Subway restaurant. Such depreciation expenses, the City maintained, operated as a tax reduction for arriving at income, but not an out of pocket expense for Mr. Zirkle. The City also contended that Mr. Zirkle's tax returns may not be wholly indicative of his ability to pay for the required demolition.

At the conclusion of the May 13, 1998, hearing, the lower court held Mr. Zirkle in contempt of court. The lower court carefully explained, however, that Mr. Zirkle would not be incarcerated if he did not have the financial ability to demolish the building. The lower court indicated that if Mr. Zirkle was concealing funds and did not demolish the building, he would be incarcerated. Mr. Zirkle was instructed to provide the City with all financial information necessary to determine the question of his financial ability to have the building disassembled, and a subsequent hearing on that financial issue was scheduled for June 1, 1998.

During the June 1, 1998, hearing, the City proffered evidence indicating that Mr. Zirkle was employed by Green King Company, whose major source of revenue was the Subway restaurant in which Mr. Zirkle owned a five percent interest. The City's evidence also demonstrated that Mr. Zirkle had origi-

---

1. Mr. Joshi is not a party to the matter presently before this Court.

2. Mr. Zirkle drove a company car through his employment with Green King Company.

nally owned 2000 of the 5000 total shares in the restaurant, but that he had transferred 1750 shares to his sister in 1991, six years prior to the initiation of this action,[3] leaving him with only five percent of the company. Through Mr. Zirkle's employment with Green King Company, he earned approximately $600 per month and drove a company car. Mr. Zirkle had owned a twenty percent interest in a building in Clarksburg, West Virginia, but had apparently equitably transferred that interest to his sister, with no deed yet recorded. Although Mr. Zirkle had received proceeds from an insurance settlement subsequent to the fire on the subject property, he had not utilized those funds for the repair or demolition of the building.

Mr. Zirkle's attorney argued during the June 1, 1998, hearing that Mr. Zirkle did not receive substantial benefit from his association with Green King Company or from his interest in the Subway restaurant. Mr. Zirkle's attorney further maintained that the transfer of stock to the sister was consummated prior to the initiation of this action and should not be viewed as concealment of assets.

Based upon the presentation of evidence, the lower court found that Mr. Zirkle was concealing assets, found him in civil contempt, and ordered him to report to jail on July 6, 1998. Mr. Zirkle thereafter filed this writ of prohibition seeking to prevent his incarceration.

## II. Standard of Review

In syllabus point one of *State ex rel. United Hospital Center, Inc. v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 (1997), this Court noted:

" 'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W.Va.Code, 53–1–1.' Syl. pt. 2, *State ex rel. Peacher v. Sencindiver,* 160 W.Va. 314, 233 S.E.2d 425 (1977)." Syllabus Point 2, *State ex rel. Kees v. Sanders,* 192 W.Va. 602, 453 S.E.2d 436 (1994).

Syllabus point four of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), explains:

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Specifically regarding our review of a civil contempt order, we explained as follows in syllabus point one of *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996),

In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

## III. Civil Contempt

In syllabus point three of *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981), we stated:

the determination of ability to pay.

3. The transfer occurring six years prior to the initiation of this action was not a pivotal issue in

The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in which the contempt may be purged, thereby securing the immediate release of the contemner, or an order requiring the payment of a fine in the nature of compensation or damages to the party aggrieved by the failure of the contemner to comply with the order.

*See also Trecost v. Trecost,* 202 W.Va. 129, 502 S.E.2d 445 (1998); *State ex rel. Britton v. Workman,* 176 W.Va. 586, 346 S.E.2d 562 (1986).

### IV. Financial Inability to Pay

Regarding a contemnor's financial inability to comply with a court order, we noted the following in *Simmons v. Simmons,* 175 W.Va. 3, 330 S.E.2d 325 (1985):

[T]he great majority of jurisdictions have expressly held or recognized that in civil contempt proceedings based upon a failure to comply with a court order requiring the payment of alimony, the burden rests upon the alleged contemnor to prove his inability to pay. See 24 Am.Jur.2d Divorce & Separation Sec. 807 (1983); Annot., 53 A.L.R.2d 591 (1957).

175 W.Va. at 5, 330 S.E.2d at 327–28.

Imposing the burden upon the contemnor is a typical approach also utilized in other jurisdictions. In *Lynch v. Lynch,* 342 Md. 509, 677 A.2d 584 (1996), the burden was placed upon the contemnor to prove his inability to comply with a court mandate in order to avoid imprisonment. 677 A.2d at 587. In *Newell v. Hinton,* 556 So.2d 1037 (Miss.1990), the Mississippi court explained that the contemnor has the burden of proving inability to pay and that such showing must be in particular terms. 556 So.2d at 1044. *See State ex rel. Watkins v. Watkins,* 972 S.W.2d 609 (Mo.App. S.D.1998); *Maddux v. Maddux,* 239 Neb. 239, 475 N.W.2d 524 (1991); *Dial v. Dial,* 103 N.M. 133, 703 P.2d 910 (App.1985); *Brown v. Brown,* 670 S.W.2d 167 (Mo.App. W.D.1984).

■ The rationale for placement of the burden of proof upon the contemnor is also cogently explained in 17 C.J.S. Contempt s 84(2), p. 214, as follows:

If an affirmative defense is set up or called for, the burden is on defendant to sustain it. So, where a court order and its violation are established or admitted, the burden is on accused to show facts which will excuse his default, and if the defense or excuse is that of inability to comply with the order, defendant has the burden of proving such inability, that it was real, and not occasioned by his own acts.

In 17 Am.Jur.2d Contempt s 61 (1964), the following explanation is forwarded:

A person who seeks to satisfy the court that his failure to obey an order or decree was due entirely to his inability to render obedience, without fault on his part, must prove such inability. In other words, the burden of proving inability to comply with the order allegedly violated is on the alleged contemnor.

We consequently find that where a contemnor alleges financial inability to pay in a civil contempt proceeding, he bears the burden of proving such inability to comply with a court mandate in order to avoid imprisonment.

### V. Due Process Rights of Civil Contemnor

■ We stated in *Chesapeake & Ohio System Federation, Brotherhood of Maintenance of Way Employees v. Hash,* 170 W.Va. 294, 294 S.E.2d 96 (1982):

[An] alleged contemnor is subject to incarceration or fine if he is found guilty of the contempt and is therefore entitled to certain fundamental procedural safeguards to insure that he is not deprived of his liberty or property without due process of law. The most basic of the procedural safeguards guaranteed by the due process provisions of our state and federal constitutions are notice and the opportunity to be heard, which are essential to the jurisdiction of the court in any pending proceeding. *State ex rel. Staley v. Hereford,* 131 W.Va. 84, 45 S.E.2d 738 (1947).

170 W.Va. at 298–99, 294 S.E.2d at 101. Syllabus point three of *Chesapeake* explains: "Before an individual may be committed to jail for contempt of court, he must be personally served with notice of the charge and afforded an opportunity to be heard and to defend."

A reasonable approach to civil contempt issues was advanced in *In re S.L.T.*, 180 So.2d 374 (Fla.App.1965), as follows:

The purpose of civil contempt proceedings is to preserve and enforce rights of private parties to suits and to compel obedience to orders and decrees made for benefit of such parties. These proceedings are generally remedial and civil in their nature. They are essentially a remedy for coercing a person to do the thing required where the disobeyed order may still be obeyed. In civil contempt proceedings the penalty is coercive rather than punitive. A punitive sentence may not be imposed and imprisonment to compel compliance is not available if the accused is unable to comply.... Due process of law requires that the party accused be advised of the charge and accorded opportunity to defend himself.... Where a court order and its violation are established or admitted the burden is on the accused to show facts which would excuse his default. If the defense or excuse is that of inability to comply, the accused has the burden of proving by a preponderance of the evidence such inability. This is based upon the fact that the making of the order involved an implicit finding of ability to comply.

180 So.2d at 378.

■ As explained above, this Court is authorized to grant a writ of prohibition against a lower tribunal upon a showing of lack of jurisdiction or if the lower court exceeded its legitimate powers. In the present case, we find that the petitioner was properly notified of the proceedings against him, as he admits. We also find that he was also provided with adequate opportunity to be heard and to defend during the two hearings provided by the lower court. At the conclusion of the first hearing, the petitioner was specifically instructed to provide financial records supporting his contention that he was financially unable to comply with the court order. During the second hearing, his rights to present evidence, to be heard, and to defend were adequately protected.

■ In examining the issue of whether the lower court exceeded its legitimate powers, *Hoover*, as discussed above, indicates that this Court is to determine whether the lower court's order is clearly erroneous as a matter of law. The petitioner failed to sustain his burden of proving his inability to pay, and the evidence presented convinced the lower court that the petitioner did have the financial means to comply with the order and purge himself of the contempt. We find no clear error in that conclusion. The petitioner was free to present any evidence he deemed relevant and was uninhibited in this regard by the lower court. Based upon evidence presented by the petitioner and the City, the lower court arrived at its conclusion. We find no basis for the granting of a writ of prohibition, and we therefore deny the requested relief.

Writ denied.

Justices DAVIS, MAYNARD and McCUSKEY joined in the Opinion of the Court.

Justice McGRAW did not participate in the decision of this case.