664 S.E.2d 118

Billy J. WATSON and Nola Watson, Plaintiffs Below, Appellees

v.

SUNSET ADDITION PROPERTY OWNERS ASSOCIATION, INC., a West Virginia corporation, Kevin and Conda Bates, Elmo and Delma Ellis, Earl and Emily Claycomb, Hobert and Rita Mack, George and Judy Bonelli, Larry and Sue Bevins, Andy and Yvonne Sos, James and Kay Nisbet, and A.D. Scaggs III, Defendants and Third–Party Plaintiffs Below, Appellants

v.

Ora Lee Watson and Marie Watson, and Darrell Watson and Pauline Watson, Third–Party Defendants.

No. 33338.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 13, 2008.

Decided March 19, 2008.

Nola Watson, McConnell, WV, Pro se.

John W. Bennett, Esq., Eiland & Bennett, Logan, WV, for Appellants.

STARCHER, J.

In the instant case we reverse a finding of contempt and remand the case for further proceedings.

## I.

### *Facts & Background*

The instant appeal before this Court arises from extensive and voluminous facts and circumstances going back more than thirty years. We summarize and discuss hereinafter those facts that are directly relevant to our decision.

During the 1970s, the appellees, Billy and Nola Watson, built an eleven-house subdivision—"the Sunset Addition"—in the unincorporated Town of McConnell in Logan County. There were no sewage treatment facilities constructed for the houses, and the houses' sewage discharged directly into a nearby river, untreated in any fashion. Approximately 300 other houses in McConnell also discharge raw sewage into the river.

In 1993, the same Billy and Nola Watson sued the Sunset Addition Property Owners Association ("the Association") and its individual members in Logan County Circuit Court, claiming that members of the Association had failed to construct a sewage treatment facility for their homes. It is proceedings in that suit that form the basis for the instant appeal.

In 1994, the parties to the 1993 suit arrived at a settlement agreement; the members of the Association agreed to construct a sewage treatment facility for their eleven houses. The Association then made numerous efforts to have such a treatment system constructed and installed; but they were allegedly impaired and frustrated in these efforts by the Watsons' (and other parties') non-cooperation with these efforts; we will not detail these events further. Eventually a treatment plant was constructed, but it was never hooked up or installed, in part because it lacked a permit from the West Virginia Department of Health and Human Resources Office of Environmental Health Services ("DHHR/OEHS").

Nola Watson and Billy Watson (who has since passed away) thereafter pursued enforcement of the settlement agreement in court. By order dated September 29, 2004, the Logan County Circuit Court found the Association members to be in contempt of court for not complying with the settlement agreement; and directed them to "complete the installation of the sewage disposal facility."

The Association thereafter requested that the DHHR/OEHS "waive" a "buffer zone rule," found at *W.Va.C.S.R.* 64.47–E, that requires a distance of one hundred feet between a treatment plant and an occupied structure. Apparently there is such a structure approximately forty feet from the Association's treatment plant.

On March 22, 2006, following an administrative hearing on the Association's buffer zone waiver request, the DHHR/OEHS issued a final order denying the request. The rationale for the denial, as expressed in the Recommended Decision of the Hearing Examiner, was essentially three-fold: (1) the plant would be a nuisance to the residents of the nearby structure; (2) the other 300 homes in McConnell contribute so much raw sewage to the river that the eleven-house plant would not accomplish much good; and (3) the better option would be to wait for a (hoped-for) extension of sewage collection and treatment service to all of the houses in McConnell, from the nearby municipality of Logan.

In April of 2006, the DHHR/OEHS decision was appealed by the Association to the Kanawha County Circuit Court, Civil Action No. 06–AA–58. However, that case is not the subject of the appeal in the instant case. (It appears that there have been no proceedings in that permit denial appeal other than a response filed by the DHHR/OEHS defending its action; the case is pending in Kanawha County.) Rather, the appeal to this Court in the instant case is made by the Association—in the contempt case from Logan County. The Association members argue before this Court that they may not be held in contempt for "not doing something" that they are in fact prohibited by law from doing—that is, installing and operating a

sewage plant without a permit. We discuss this claim in III. *infra.*

## II.

### Standard of Review

■ Syllabus Point 1 of *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) states:

In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

## III.

### Discussion

■ May the appellants be held in contempt for failing to install a treatment plant for which they have been unable to get a permit? Our research suggests that the answer is "no."

In *State ex rel. Pelton v. Irwin*, 30 W.Va. 404, 424, 4 S.E. 413, 424 (1887), this Court said, "Certainly, the Court had no authority to imprison the defendants [for contempt] until they did an impossible thing." In Syllabus Point 5 of *State ex rel. Zirkle v. Fox*, 203 W.Va. 668, 510 S.E.2d 502 (1998), this Court stated:

Where a contemnor alleges financial inability to pay in a civil contempt proceeding, he bears the burden of proving such inability to comply with a court mandate in order to avoid imprisonment.

This Court went on to say in *Zirkle:*

In 17 *Am.Jur.2d* Contempt § 61 (1964), the following explanation is forwarded:

A person who seeks to satisfy the court that his failure to obey an order or decree was due entirely to his inability to render obedience, without fault on his part, must prove such inability. In other words, the burden of proving inability

to comply with the order allegedly violated is on the alleged contemnor. 203 W.Va. at 672, 510 S.E.2d at 506.

In *Badgley v. Santacroce,* 800 F.2d 33, 36 (2d Cir.1986), the court said, "A party may defend against a contempt by showing that his compliance is 'factually impossible.' *United States v. Rylander,* 460 U.S. 752, 757, 103 S.Ct. 1548, 1552, 75 L.Ed.2d 521 (1983)." In *Ex parte Chambers,* 38 Tex.Sup.Ct. 448, 898 S.W.2d 257, 261 (1995), the court stated, "The involuntary inability to comply with an order is a valid defense to criminal contempt, for one's noncompliance cannot have been willful if the failure to comply was involuntary." *See also Maggio v. Zeitz,* 333 U.S. 56, 73, 68 S.Ct. 401, 410, 92 L.Ed. 476 (1948) (it is improper to punish one for contempt "for omitting an act he is powerless to perform.").

From the foregoing discussion, it seems to be settled law—and we hereby hold—that a party may not ordinarily be held in contempt for failure to perform an act that the party is unable to legally perform, if the evidence establishes that the party's inability to legally perform the act is not the party's fault.

The record before this Court demonstrates that the appellants have diligently tried to secure legal permission to install the sewage treatment plant. Applying the foregoing test to the facts of the instant case, the circuit court's finding of contempt against the appellants must be reversed, because they are prohibited by law from complying with the settlement agreement through no fault of their own.

## IV.

### *Conclusion*

Resolving the issue of the appellants' contempt, however, does little to put this case in a proper posture for resolution; because the existence of two separate proceedings in two separate circuit courts—proceedings that in large measure address the same issue—frustrates such resolution.

Consequently, this Court directs that the Circuit Court of Logan County on remand of the instant case shall request the transfer of the Kanawha County permit appeal to Logan County; and, assuming that said transfer occurs, the Logan County court shall then consolidate the two cases.[1] At this juncture, the circuit court will hopefully have before it all of the parties necessary to resolve all of the issues among the parties-including the DHHR/OEHS, the appellants, and the appellees.[2]

Reversed and Remanded with Directions.

Chief Justice MAYNARD, deeming himself disqualified, did not participate in the decision of this case.

Judge JAMES A. MATISH, sitting by temporary assignment.

1. Venue for the permit appeal is proper in either county, *W.Va.Code,* 29a–5–4(b) [1998].

2. The appellants also raise the issue of whether various additional parties, third-party defendants, former and current owners of the houses in question, etc. are or need to be appropriately before the Court. We recognize that some adjustment of or addition to the parties who are in the consolidated case may have to take place.