# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**B.L.,**
**Defendant Below, Petitioner**

**vs)  No. 17-0003** (Monongalia County 05-C-429)

**A.D.,**
**Plaintiff Below, Respondent[1]**

**FILED**

**January 5, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner B.L., by counsel Edmund J. Rollo, appeals the order of the Circuit Court of Monongalia County, entered on December 6, 2016, denying his fifth motion to dissolve a civil contempt order. Respondent A.D. appears by counsel Ward D. Stone Jr. and Joseph V. Schaeffer.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2005, respondent obtained a judgment of $500,000 against petitioner as compensation for petitioner's having infected respondent with the human immunodeficiency virus. Though petitioner received a distribution of nearly $375,000 from his mother's estate later that same year, he did not disclose the receipt of that money and failed to make any payment on the judgment. Petitioner has maintained (despite the dearth of corroborating evidence) that he donated the entirety of his inheritance in small, anonymous gifts to thousands of charities. The circuit court entered an order of civil contempt in July of 2010, upon petitioner's failure to offer evidence supporting his assertion that he made these charitable donations. Though petitioner was ordered to incarceration for his contempt, the circuit court later modified its order to provide for

---

[1] By order entered on April 24, 2017, we granted respondent's motion "to restrict access to personal identifiers" pursuant to Rule 40 of the West Virginia Rules of Appellate Procedure. Consistent with that order and with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

home confinement. The contempt order specified that petitioner would remain confined until he paid $363,000 toward the judgment.[2]

In the years since he was found in contempt, petitioner has sought dissolution of the contempt order in five separate motions. In his most recent attempt, filed in September of 2016, petitioner asserted that the passage of time has rendered him unable to prove the charitable donations, that the contempt order has lost any coercive effect, and that home confinement detrimentally affects his health. The circuit court conducted a hearing, then denied the fifth motion to dissolve the contempt order on December 6, 2016. The appeal of that denial is before us on petitioner's single assignment of error: that the circuit court abused its discretion in denying his motion, because the contempt order is no longer coercive.[3] Our review is established as follows:

> "In reviewing the findings of fact and conclusions of law of a circuit court supporting a civil contempt order, we apply a three-pronged standard of review. We review the contempt order under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review." Syl. Pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

Syl. Pt. 3, *State ex rel. Zirkle v. Fox*, 203 W. Va. 668, 669, 510 S.E.2d 502, 503 (1998).

As we explained on the last occasion that petitioner came before us seeking dissolution of his contempt order:

> [c]ivil contempt proceedings are not meant to punish the defendant but rather to benefit the [p]laintiff. *Floyd v. Watson*, 163 W.Va. 65, 70, 254 S.E.2d 687, 691 (1979). "[C]oercive measures influence the defendant to act in a way that will ultimately benefit the moving party." *Id.* at 71, 254 S.E.2d at 691. "The appropriate sanction in a civil contempt case is an order that incarcerates a contemner for an indefinite term and that also specifies a reasonable manner in

---

[2] Petitioner showed that he transferred $11,000 to his business.

[3] Petitioner's arguments center on his *willingness* to pay, rather than his *ability* to pay. Though the ability is irrelevant to this appeal, we nevertheless stress that petitioner's actions indicate both that he is able to pay a significant portion of the judgment, and that he has shown a shocking disregard for the authority of the circuit court. The circuit court's findings—unchallenged by petitioner—relate numerous inconsistencies and changes in petitioner's explanation of the distribution of money, as well as petitioner's "frustrat[ion of respondent's] efforts to discover evidence." The findings also describe petitioner's seeking leave of the court to travel outside the state for medical treatment as "a ruse to secure a vacation in Florida over the Christmas holiday." The appendix record on appeal reveals that petitioner initially denied the existence of the asset distribution and eventually began moving money among accounts and making large cash withdrawals in aid of concealing his wealth.

which the contempt may be purged thereby securing the immediate release of the contemner[.]" *State ex rel. Robinson v. Michael*, 166 W.Va. 660, 670, 276 S.E.2d 812, 818 (1981). However, a civil contempt order is inappropriate when the condemner has no ability to purge himself or the contempt order has lost its coercive effect. *In re Yoho*, 171 W.Va. 625, 631, 301 S.E.2d 581, 587 (1983); *Shillitani v. U.S.*, 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Petitioner bears the burden of proof in showing that he cannot comply with the court order or that the order has lost its coercive effect. *State ex rel. Zirkle v. Fox*, 203 W.Va. 668, 673, 510 S.E.2d 502, 507 (1998); *In re Dickinson*, 763 F.2d 84, 87 (2d Cir.1985); *In re Crededio*, 759 F.2d 589, 590–591 (7th Cir.1985). "Ordinarily, it is for the district judge to determine when and if the borderline between coercion and punishment has been reached." *Soobzokov v. CBS, Inc.*, 642 F.2d 28, 31 (2d Cir.1981). A district court judge will have virtually unreviewable discretion in determining whether the contempt order still has a coercive effect. *Simkin v. U.S.*, 715 F.2d 34, 38 (2d Cir.1983).

*B.L. v. A.D.*, No. 12-0809, 2013 WL 6604448, at *3 (W.Va. Dec. 16, 2013)(memorandum decision).

We complement these earlier-stated principles with common-sense notions explained by our sister court:

> The credibility of the contemnor's avowed refusal to comply with the order is one circumstance that a court may consider in determining whether a sanction for civil contempt remains coercive. ([*In re*] *Crededio*, 759 F.2d [589] at 593 [(7th Cir. 1985)].) There is no requirement, however, that a court accept a contemnor's declaration as dispositive. (*In re Parrish* (2d Cir.1986), 782 F.2d 325, 327; *Simkin* [*v. United States*], 715 F.2d [34] at 37 [(2nd Cir. 1983)]; *United States v. Dien* (2d Cir. 1979), 598 F.2d 743, 745.) "Obviously, the civil contempt power would be completely eviscerated were a defiant witness able to secure his release merely by boldly asserting that he will never comply with the court's order." *In re Grand Jury Investigation*, 600 F.2d [420] at 425 [(3rd Cir. 1979)].
>
> . . . The unique nature of the finding required in these circumstances has been expressed as follows:
>
>> "The determination to be made by the . . . judge is far removed from traditional fact[-]finding. What is called for is obviously not a retrospective determination of a historical fact, nor even a prospective determination of a future fact, such as the amount of medical expenses a tort victim will incur. The determination is not even akin to fact-finding as to a future hypothetical matter, such as the profits a plaintiff would have made but for a defendant's actionable wrongdoing. Instead, the . . . judge is obliged to look into the future and gauge, not what will happen, but the prospect

3

that something will happen." (Emphasis omitted.) *In re Parrish* (2d Cir. 1986), 782 F.2d 325, 327.

In view of the nature of this finding, and the trial judge's obvious advantage in seeing and hearing the witnesses firsthand, review of the decision is highly deferential. *Crededio*, 759 F.2d at 591; *Simkin*, 715 F.2d at 38.

*Sanders v. Shephard*, 163 Ill. 2d 534, 541-42, 645 N.E.2d 900, 904 (1994).

In light of these principles, we find that the circuit court did not abuse its discretion is denying petitioner's fifth motion to dissolve the civil contempt order under which he is subject to home confinement. Petitioner's unwillingness to produce even a modicum of evidence that he covertly divested himself of $375,000 led the circuit court to the only logical conclusion: that petitioner remains in possession of a substantial sum of money. More important to the question before us, it is apparent that the circuit court undertook consideration of the prospect that, at some time in the future, petitioner would either remit payment or otherwise attempt to purge himself of the contempt. The circuit court noted in its order, for example, that petitioner had "use[d] medical appointments as a ruse to suspend his home confinement and enjoy a Christmas vacation in Florida." Petitioner has not met his burden of proof to show that the civil contempt order has lost its coercive effect.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 5, 2018

**CONCURRED IN BY:**

Chief Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

4